McILROY *v.* FUGITT.

Opinion delivered December 22, 1930.

1018

*J. V. Walker* and *Pearson & Pearson,* for appellant.
*Karl Greenhaw,* for appellee.

BUTLER, J. This suit originated in an action by
the First National Bank of Fayetteville against Kate
Fugitt, E. C. Fugitt, J. H. McIlroy, and J. H. McIlroy
as trustee. The Fugitts had executed to the bank a note
securing a debt of $17,000, one note for $15,000 and two
notes for $1,000 each. These last two notes had been
assigned by the bank without recourse to McIlroy with
the understanding that they were inferior to the lien of
the mortgage on the $15,000 note. After this transaction
the Fugitts borrowed more money from McIlroy who was
representing himself and others and to secure the same
executed a second mortgage. The Fugitts conveyed to
McIlroy as trustee by warranty deed the property con-
tained in the two mortgages aforesaid, the property be-
ing identical in each of the mortgages, and contemporane-
ous with the deed there was a contract between McIlroy
as trustee and the Fugitts by which the Fugitts were to
repurchase the property. The Fugitts were to pay $250
a month and a sufficient sum in addition to be deposited
in what was called a sinking fund to take care of the
taxes and insurance, and upon the payment of a stipu-
lated sum McIlroy was to reconvey the property to the
Fugitts.

As subsequently found by the chancellor, the deed
made to McIlroy was in effect a mortgage, and the lease
contract mentioned above was in reality the method by

which the indebtedness owing by the Fugitts to McIlroy was to be repaid. There was a decree of foreclosure of the mortgage made by the Fugitts to the bank and the rights of McIlroy as second mortgagee were ascertained and the balance of the indebtedness owing to him by the Fugitts adjudged. The property conveyed by the mortgages was ordered sold by the commissioner appointed for that purpose, and at the sale the appellee, George Appleby, purchased the property for the sum of $20,000. A number of persons intervened seeking a share of the fund arising from the commissioner's sale. After paying the sum due the bank there was a surplus which was not sufficient to pay McIlroy, who was adjudged to be the second mortgagee.

The property was included in a number of local improvement districts lying within the city of Fayetteville, and the mortgaged property was delinquent for the assessments levied against it in the several districts, which, at the time of the decree, amounted to the sum of $1,011.12. The court, in its order distributing the fund remaining after the satisfaction of the debt to the bank, ordered that the commissioner pay these delinquent assessments and that the residue be paid to McIlroy, which, after the assessments were paid, lacked $1,994.45 of the amount necessary to pay McIlroy's debt. It is from the order directing the commissioner to pay out of the proceeds the past due municipal improvement assessments that this appeal has been prosecuted, the parties in interest to this appeal being McIlroy on the one hand and Appleby on the other, and, if the order of the court below is sustained, Appleby will acquire the lands free from the incumbrance of the special assessments, while, if the order was erroneous, McIlroy will receive an additional $1,011.12 to be applied to his debt against the Fugitts.

To support the order of distribution made, Appleby insists first that it was the duty of McIlroy as second mortgagee in possession and receiving rents from the

property to have paid the local assessments, especially as he says that it was the contention of McIlroy throughout the litigation that he was in fact the owner of the property by reason of his deed from Fugitt dated August 1, 1928, and as such entitled to the fund remaining after the satisfaction of the bank's debt, as it was shown that McIlroy received through payments from Fugitt sums amounting to $4,000—more than sufficient to pay the taxes and assessments on the property. To sustain this contention, he cites the cases of *Cotton* v. *White*, 131 Ark. 273, 199 S. W. 116; *Security Mortgage Co.* v. *Harrison*, 176 Ark. 423, 3 S. W. (2d) 59; and *Flower* v. *Bricker*, 178 Ark. 764, 12 S. W. (2d) 394.

In the case of *Cotton* v. *White, supra,* the court said: "One in possession of lands and receiving the rents and profits thereof under claim of ownership will not be permitted to strengthen his title by allowing the lands to forfeit for taxes and purchase it at a tax sale." In *Security Mortgage Co.* v. *Harrison, supra,* the following language is used: "Of course, where one is in possession receiving rents and profits from mortgaged property, he has money to pay the taxes, and it has been held that under such circumstances he owes the duty to pay the taxes"; and, in the case of *Flower* v. *Bricker, supra,* it was held that under the peculiar circumstances of that case the second mortgagee who had purchased the title of the mortgagor on paying the taxes could not be subrogated to the State's lien so as to obtain a lien paramount to the first mortgagee, for the court held that as between the second mortgagee and the first mortgagee under the facts in that case it was the duty of the second mortgagee to pay the taxes.

To support the principles above announced, the cases of *Frierson, etc.,* v. *Branch,* 30 Ark. 453; *Jacks* v. *Dyer,* 31 Ark. 334; *Guynn* v. *McCauley,* 32 Ark. 97; and *Ross* v. *Frick Co.,* 73 Ark. 45, 83 S. W. 343, are cited by the court in the cases *supra.* We have made a careful examination of the cases referred to in appellee's brief and the

cases cited by the court, *supra,* and are of the opinion that they do not support the contention of the appellee here made. The effect of these decisions is simply that, where several claim title or have an interest in lands, one cannot strengthen his title by allowing the lands to forfeit and buy them in at a tax sale when he himself is in possession or is receiving the profits arising from the lands sufficient to discharge the tax burdens. The rule in those cases does not inure to the benefit of a stranger to the title, as he had no interest in the property which might be adversely affected by any action, or failure to act, on the part of another who had claimed an interest in the lands. In the case at bar it would be immaterial, in so far as the rights of Appleby are concerned, whether McIlroy's claim to the surplus fund arose from the ownership of the title or as second mortgagee, for there was no duty resting upon any one to do anything for his benefit. His relationship to the property began at the time of his purchase at the judicial sale, and his rights must be governed by the rules applicable to such purchasers.

It is the general rule that purchasers of land at judicial sales take only such interest as that of the owner whose title is foreclosed and subject to all the liens resting thereon, including the lien for unpaid taxes. He takes subject to the rule *caveat emptor. Guynn* v. *McCauley,* 32 Ark. 112; *Black* v. *Walton,* 32 Ark. 321; 35 C. J. 78, § 121; *Farmers' & Planters' Bank* v. *Martin,* 61 Am. Dec. 350, 7 Md. 342; *Creps* v. *Baird,* 3 Ohio State 277; 42 C. J. § 1909; *Pate* v. *Peace, ante* p. 618; *Cook* v. *Panich, ante* p. 982. In this State taxes on real estate are not personal obligations of the owner, but liens which follow the land, and under the rule of *caveat emptor* the purchaser at a judicial sale would take the land burdened therewith. It is contended, however, that this rule has been changed by statute, of which § 10,056 of the Digest is a part, and which provides that "whenever any land so held by tenants in common shall be sold upon proceedings in parti-

tion, or shall be taken by the election of any of the parties to such proceedings, or whenever any real estate shall be sold at judicial sale or by administrators, executors, guardians or trustees, the court shall order the taxes and penalties and the interest thereon against such lands to be discharged out of the proceeds of such sale or election." This section is the authority cited for the action of the court in making the distribution in the instant case and was a part of act No. 114 of the Acts of 1883. It is obvious from an examination of the entire act that its purpose was to provide for the assessment and collection of State revenues. This was a comprehensive and complete statute, its purpose being definitely and precisely stated in its title, namely, "An Act to Revise and Amend the Revenue Laws of Arkansas." Therefore it is clear that the language quoted above, § 166 of that act, and the reference made to the taxes, "taxes, penalties and interest thereon," referred to the general revenues of the State and not to assessments for local improvements. It is the rule in this State, and that most generally followed by courts of the other States and of the United States, that where the word "taxes" is used in a statute, it is construed to have reference to taxation for general purposes and not to local assessments. *Lewis* v. *Delinquent Lands, ante* p. 858, and cases therein cited. As there was no expression in the statute under consideration by which any intention on the part of the Legislature could be inferred to make it apply to improvement district assessments, the general rule of construction would exclude such taxes, for, as is stated in *Miners' Bank of Joplin* v. *Churchill,* 156 Ark. 191, 245 S. W. 829, this statute is in derogation of the common law and must therefore be strictly construed. Placing this construction upon it, it becomes apparent that the learned chancellor erred in ordering the local assessments paid out of the fund in court.

It is insisted by the appellee that the act of 1883, *supra,* was lifted out of the statutes of the State of Ohio and that we must adopt the construction placed upon it

by the courts of the state from which it is borrowed. Appellee cites the case of *Mackley* v. *Whitmore,* 61 Ohio St. 587, and interprets that decision as authority for his contention that assessments for local improvements come within the terms of that part of the act which is now § 10,056 of our Digest. Without determining whether the appellee has correctly interpreted that decision, it suffices to say that that case was not decided until the year 1900 and we adopt only the construction placed on the statute at or before the time of its adoption· and not the construction placed upon it thereafter, and if the import of *Mackley* v. *Whitmore, supra,* is that contended for, it would then be in conflict with the rule heretofore stated. Moreover, this court has construed the statute under consideration in the light of the then existing decisions of the Ohio courts, and as the rule announced conforms to the general rule as to the construction of taxes and taxation as used in revenue statutes, we now adhere to the principle there laid down. In *Miners' Bank of Joplin* v. *Churchill, supra,* we said: ''In the cases cited the Ohio court construed the statute to mean that all taxes due and unpaid up to the date of the sale should be paid out of the proceeds of the sale and should be paid by the commissioner when so ordered by the court.

''It is also decided by the court that the statute, being in derogation of the common law, should be strictly construed, and that it did not embrace redemption from tax sale, but only embraced the discharge of tax liens due the State. In a later case it was decided by the court that the statute did not include local improvement assessments.''

Appellee contends that the court in that case misunderstood and wrongly interpreted the holding of the Ohio court, but, if so, the conclusion was justified by the general rule that ''an assessment of benefits for local improvements has never been regarded as a tax or termed such in legislative proceedings in our public or private laws, or in popular intercourse,'' and * * * ''assessments

1024

upon real estate for local improvements have no connection whatever with the general taxing powers mentioned.''

It follows that the judgment of the court below must be reversed, and the cause remanded for further proceedings according to law and not inconsistent with this opinion.