The **WARREN COMPANY, Inc.,**
Plaintiff,

v.

**Joe C. NEEL and Rufus Neel, d/b/a Food Center, Neel's Food Center, Inc., Kimbell Milling Company, Buddies Super Markets, Inc., Defendants.**

Civ. A. No. 1092.

United States District Court
W. D. Arkansas,
Hot Springs Division.

May 6, 1968.

Wootton, Land & Matthews, Hot Springs, Ark., for plaintiff.

W. H. Arnold, McMillan, McMillan & Turner, Arkadelphia, Ark., for the Neels and Neel's Food Center.

Crumpler, O'Connor, Wynne & Mays, El Dorado, Ark., for Kimbell and Buddies.

## OPINION

JOHN E. MILLER, Senior District Judge.

The plaintiff, by its complaint herein, is seeking to obtain restitution of property involved herein or, in the alternative, if the court deems it more equitable, a joint and several judgment against each of the defendants in an amount which fairly represents the value of plaintiff's property wrongfully applied to the defendants' benefit, and for its costs.

It appears that the court should state the underlying facts before abstracting the pleadings filed by the parties in the instant case.

The plaintiff, The Warren Company, Inc., is a corporation incorporated under the laws of the State of Georgia with its principal place of business in Atlanta, Georgia.

The defendants Joe C. Neel and Rufus Neel, d/b/a Food Center, are citizens of Arkansas and residents of Arkadelphia, Clark County, Arkansas.

The defendant Neel's Food Center, Inc., is a corporation incorporated under the laws of the State of Arkansas with its principal place of business in Arkadelphia.

The defendant Kimbell Milling Company is a corporation incorporated under the laws of the State of Texas and has its principal place of business in Fort Worth.

The defendant Buddies Super Markets, Inc., is a corporation incorporated under the laws of Arkansas with its principal place of business in Magnolia.

Prior to September 1, 1962, the defendants Joe C. Neel and Rufus Neel were doing business as Food Center. On September 1, 1962, the business was incorporated as Neel's Food Center, Inc., and the business as Food Center was dissolved and there was no partnership between Joe C. Neel and Rufus Neel known as Food Center after September 1, 1962.

On December 27, 1963, plaintiff delivered to Joe C. Neel certain equipment and fixtures required in the operation of the grocery store. On that date Joe C. Neel signed a conditional sales contract and a promissory note agreeing to pay $18,629.87 for the property purchased at that time from the plaintiff.

On August 17, 1964, the plaintiff sold by conditional sales contract to Joe C. Neel certain equipment and machinery for the sum of $2,579.40, and on the same date Joe C. Neel executed and delivered a promissory note to plaintiff evidencing the indebtedness. The purchaser or purchasers of the equipment and machinery defaulted on the payment of the purchase price, and on January 12, 1967, there was $10,557.04 due and owing on the note of December 27, 1963, and on January 12, 1967, there was due and owing on the note of August 17, 1964, the sum of $1,146.40.

On January 15, 1964, the plaintiff filed with the Circuit Clerk and Ex-Officio Recorder of Clark County, Arkansas, as financing statement No. 85 of that office, a copy of the conditional sales contract of December 27, 1963; and on January 16, 1964, a copy of the sales contract was filed as a financing statement with the office of the Secretary of State of the State of Arkansas under financing File No. 14002.

On August 26, 1964, the plaintiff filed with the Circuit Clerk and Ex-Officio Recorder of Clark County, Arkansas, as financing statement No. 1077 of that office, a copy of the conditional sales contract of August 17, 1964, and on the same date filed a copy of the aforesaid conditional sales contract as a financing statement by plaintiff with the office of the Secretary of State, State of Arkansas, under financing statement File No. 18635.

On May 7, 1965, the defendant Neel's Food Center, Inc., executed and delivered to the defendant Kimbell Milling Company, a security agreement and financing statement to secure the payment of its promissory note in the amount of $33,-000, dated May 7, 1965. The note was signed:

"NEEL'S FOOD CENTER INC.

By  <u>Rufus C. Neel</u>
      Rufus C. Neel-President
      <u>Rufus C. Neel</u>
      Rufus C. Neel-Individually

By  <u>Joe C. Neel</u>
      Joe C. Neel-Secretary
      <u>Joe C. Neel</u>
      Joe C. Neel-Individually"

The security agreement and financing statement was filed in the office of the Circuit Clerk and Ex-Officio Recorder

of Clark County, Arkansas, on May 7, 1965, and appears under file No. 542 of the financing statement records of Clark County. A copy of the security agreement and financing statement was filed with the Secretary of State for the State of Arkansas on October 4, 1965, and appears under file No. 27586 in the financing statement records of that office.

Defendant Kimbell Milling Company instituted suit, No. 6557, in the Chancery Court of Clark County, Arkansas, against Neel's Food Center, Inc., following its default on the payment of its promissory note and the security agreement. The plaintiff, The Warren Company, Inc., was made a party defendant, and filed its answer in which it alleged that the Kimbell Milling Company had actual knowledge of the existing lien held by Warren when it first started doing business with Neel's Food Center, Inc., and with Joe Neel. Warren set forth in full its claim as evidenced by the security agreements, and prayed that the complaint of Kimbell Milling Company be dismissed insofar as the liens claimed by Warren were concerned; that the court dismiss the claims of the Kimbell Milling Company because it had actual notice by Joe Neel of the existing liens of Warren; that the court find that the liens of Warren were senior and superior to those of Kimbell and all other parties; and that the said equipment listed in the financing statements be freed from all claims of other parties to the litigation and that Warren's title to said equipment be found to be paramount as stated in the financing statements.

On April 5, 1967, the Chancery Court entered the following order:

## "ORDER DISALLOWING CLAIM OF THE WARREN COMPANY

"Now on this 5th day of April, 1967, comes on for hearing the objections of the plaintiff, Kimbell Milling Company, to the claim of the defendant, The Warren Company, against Neel's Food Center, Incorporated; and comes the plaintiff by its attorneys, Crumpler, O'Connor, Wynne & Mays; the defendant, The Warren Company, by its attorney, J. E. Still; and the Receivers herein, by their attorneys, Lookadoo, Gooch & Lookadoo; and this matter is submitted to the Court upon the Complaint of the plaintiff; the Answer of The Warren Company; the Interrogatories propounded to The Warren Company by the plaintiff and the Answers thereto of The Warren Company; statements of counsel and other matters, things and proof before the Court, from all of which the Court doth find:

"That all of the claims of The Warren Company against Neel's Food Center, Incorporated, are based upon written instruments entitled 'Conditional Sales Contract' which were executed within the State of Arkansas; that The Warren Company is a corporation organized and existing under the laws of the State of Georgia, and was not, at the time of the execution of said instruments, qualified to do business in the State of Arkansas in accordance with the laws of this State; that there is no showing that the transactions giving rise to said instruments were interstate in nature; that the claims of The Warren Company for judgment for its debt against Neel's Food Center, Incorporated, and/or for enforcement of its alleged security interest in any property of Neel's Food Center, Incorporated, are unenforceable in the Courts of the State of Arkansas, by reason of Arkansas Statute 64–1201 et seq. and should be dismissed.

"It is Therefore, Considered, Ordered, Adjudged and Decreed That the claims of The Warren Company for judgment against Neel's Food Center, Incorporated and/or for enforcement or priority of its alleged security interest in any of the assets of Neel's Food Center, Incorporated, be and the same are hereby dismissed."

The Chancery Court then proceeded to dispose of the claims of the other parties and rendered judgment in favor of Kimbell for the amount of the indebtedness

due it, which included interest and attorneys' fees, subject only to the claim of National Cash Register in the sum of $772.86 and the claim of Merchants and Planters Bank & Trust Company for $225.58, and declared a lien upon all of the equipment, including that claimed by Warren. A receiver was appointed to take charge of the property, and on March 22, 1967, the Chancery Court entered an order directing the receiver to proceed to sell the assets of Neel's Food Center, Inc., on April 27, 1967, at 10:00 a.m. at public auction to the highest bidder at the premises of Neel's Food Center, Inc., at which sale Kimbell was the highest and best bidder for the sum of $39,000.00. The judgment in favor of Kimbell was credited with such bid after deduction of costs and claims in the amount of $6,074.57 which had priority to the claim of Kimbell, resulting in a total credit on the judgment of $32,925.-43.

The property purchased by Kimbell at the sale was subsequently sold by Kimbell to the defendant Buddies Super Markets, Inc. All of the capital stock of Kimbell is owned by the Estate of Kay Kimbell. The ownership of Buddies Super Markets, Inc., is as follows:

Estate of Kay Kimbell — 40%
J. C. Pace & Company — 50%
A. L. Scott — 10%

The property purchased is now in the store operated by Buddies Super Markets, Inc.

On May 26, 1967, Warren wrote and mailed to Joe C. Neel, Individually, and d/b/a The Food Center; Neel's Food Center, Inc., Kimbell Milling Company; and Buddies Super Markets, Inc., the following letter:

"Re: Property, Equipment and Machinery of The Warren Company, Inc.

"This is to advise that The Warren Company, Inc., does hereby rescind the agreements of December, 1963, August, 1964, and the two promissory notes and conditional sale contracts evidencing the same, to-wit: Promissory note and conditional sale contract in the sum of $18,629.87 upon which there is a balance due and owing in the amount of $10,557.04, and promissory note and conditional sale contract in the amount of $2,579.40 upon which there is a balance due and owing in the amount of $1,146.40.

"The Warren Company, Inc., hereby demands full restitution forthwith of all the property, machinery and equipment, a list of which can be found on the conditional sale contracts referred to above, or the proceeds from a sale of same.

"This election to rescind is made as a result of Judge Royce Weisenberger's decision and opinion of April 5, 1967, in the case of Kimbell Milling Company vs. Neel's Food Center, Inc., et al., No. 6557, in the Chancery Court of Clark County, Arkansas, in which the court found that The Warren Company, Inc., was a foreign corporation and had not qualified to do business in the State of Arkansas and, therefore, its contracts were unenforceable in the courts of this State. If you wish to comply with this demand and make restitution of of the property, please advise the undersigned before the 15th day of June, 1967. If we have not heard from you by that date, we will assume that you will not voluntarily relinquish and turn over possession of said property or the proceeds from a sale of same, and we will proceed accordingly."

On June 15, 1967, Warren wrote Mr. Rufus Neel, d/b/a/ The Food Center, as follows:

"This is to advise that The Warren Company, Inc., has on the 26th day of May, 1967, and does hereby rescind the agreements of December 1963-August, 1964, and the two promissory notes and conditional sale contracts evidencing the same to-wit: Promissory note and conditional sale contract in the sum of $18,629.87 upon which there is a balance due and owing in the amount of $10,557.04, and promissory note and conditional sale contract in the amount of $2,579.40 upon which

there is a balance due and owing in the amount of $1,146.40.

"The Warren Company, Inc., hereby demands full restitution forthwith of all the property, machinery and equipment, a list of which can be found on the conditional sale contracts referred to above, or the proceeds from a sale of same.

"This election to rescind is made as a result of Judge Royce Weisenberger's decision and opinion of April 5, 1967, in the case of Kimbell Milling Company vs. Neel's Food Center, Inc., et al., No. 6557, in the Chancery Court of Clark County, Arkansas, in which the court found that The Warren Company, Inc., was a foreign corporation and had not qualified to do business in the State of Arkansas and, therefore, its contracts were unenforceable in the courts of this State. If you wish to comply with this demand and make restitution of the property, please advise the undersigned before the 21st day of June, 1967. If we have not heard from you by that date, we will assume that you will not voluntarily relinquish and turn over possession of said property or the proceeds from a sale of same, and we will proceed accordingly."

Following the mailing of the letters above set forth, the complaint of plaintiff was filed on July 21, 1967. On August 9, 1967, Kimbell and Buddies Super Markets, Inc., filed a motion to dismiss which the court denied on August 22, 1967.

On August 14, 1967, the defendants Joe C. Neel and Rufus Neel and Neel's Food Center, Inc., filed their answer, paragraph 3 of which is as follows:

"These defendants admit the two sales of December 27, 1963, and August 17, 1964, and admit that so far as they know, this property is presently located in a grocery store on Pine Street in Arkadelphia, Arkansas."

They alleged that the property was purchased by Neel's Food Center, Inc., and denied that it was intended to bind Joe C. Neel, individually, or Rufus Neel, but that the purchase was made for the Neel's Food Center, Inc., and it was the intention of the parties that the said corporation should be liable for the purchase price of the property.

On August 25, 1967, the separate answer of Kimbell and Buddies Super Markets was filed. In paragraph 7 of the answer, they admitted that Kimbell sold the assets purchased at the receiver's sale to Buddies Super Markets, Inc., denied that it is a totally owned subsidiary of Kimbell; and alleged that the sale was an arm's length transaction and for a valuable consideration. In paragraphs 11, 12, 13 and 14 of the answer, they alleged:

"11.

"THAT thereafter, on April 5, 1967, an Order Disallowing Claim of The Warren Company was entered by said Chancery Court, a copy of said Order being attached hereto as Exhibit 'B'; that no appeal therefrom was taken, nor were there other claims entered in said cause by The Warren Company; that the subject of the recision of the contracts described in plaintiff's complaint is a matter which might have properly been considered by the said Chancery Court; that said Order is res judicata or conclusive of all matters and issues relating to the claims of all parties to said suit which might have properly been brought before said Court, and the plaintiff herein should therefore be barred from maintaining this action;

"12.

"THAT said Order Disallowing Claim of The Warren Company was entered in said cause on April 5, 1967; that the sale of the assets of Neel's Food Center, Incorporated, was held pursuant to Order of said Chancery Court on April 27, 1967, at which sale said assets were purchased by Kimbell Milling Company; that subsequent to said sale the assets purchased by Kimbell Milling Company were sold for a valuable consideration to the defend-

ant, Buddies Super Markets, Inc.; that no claim was made by The Warren Company to said property from April 5, 1967, until after said sale, on or about May 26, 1967, at which time the letters referred to in paragraph No. XIII of the complaint were mailed, and thereafter until on or about July 21, 1967, the date of filing of this action; that to allow the plaintiff, The Warren Company, to recover from the defendants, Kimbell Milling Company and/or Buddies Super Markets, Inc., at this time would be highly inequitable and unjust to these defendants who have relied upon the Orders of the said Chancery Court and upon the inaction of the plaintiff herein, and said plaintiff should be barred from maintaining this action against these defendants on the equitable grounds of laches;

"13.

"THAT the defendant, Kimbell Milling Company, purchased the assets of Neel's Food Center, Incorporated, at a judicial sale for a valuable consideration; that the defendant, Buddies Super Markets, Inc., purchased the assets of Neel's Food Center, Inc., from Kimbell Milling Company for a valuable consideration and as a part of an arm's length transaction; that the said Kimbell Milling Company and/or Buddies Super Markets, Inc., are innocent purchasers for value of the assets claimed by the plaintiff herein, and the said property now in the hands of Buddies Super Markets, Inc., is not subject to any claims or demands of the plaintiff who was a party to the proceedings in which said property was sold;

"14.

"THAT these defendants further state that the conditional sales contracts under which the property claimed by the plaintiff herein was placed in the possession of the Neel's Food Center, Incorporated, were void ab initio under the law of the State of Arkansas, and that the plaintiff herein has no right, title or claim to such property or to a recision of said conditional sales contracts."

On December 11, 1967, a pretrial conference was held, at which the issues were discussed and the court suggested that it appeared "that the material issues might be determined by the court by the filing of cross motions for summary judgment properly supported by briefs; and that upon the filing thereof, the court would examine the motions and briefs, and if no material facts appear, the case would be disposed of on the motions."

On January 23, 1968, the attorneys filed a stipulation of facts, many of which have heretofore been stated. However, they did not agree that the amount involved exceeded the sum of $10,000, exclusive of interest and costs. On March 25, 1968, the court held a hearing for the purpose of determining whether the amount involved met the jurisdictional requirements. The court did not announce at the conclusion of the hearing its finding as to the amount in controversy and requested the parties to brief that question, which the parties have done.

On February 29, 1968, the plaintiff, with leave of court, filed an amendment to its complaint, in which it alleged that the sale by Warren to the Food Center in Arkadelphia, Ark., was a transaction in interstate commerce. The amendment was not made as a substitution of the jurisdictional allegations in the original complaint but in addition thereto.

On March 8, 1968, Kimbell and Buddies Super Markets, Inc., filed an answer to the amended complaint, in which they denied that the transaction was in interstate commerce, and alleged:

" * * * that the interstate or intrastate character of the transactions and contracts described in paragraph No. 1 of the Amendment to Complaint was before the Court and fully heard and determined in the proceedings held in the Chancery Court of Clark County, Arkansas, in which proceedings the

plaintiff was a party defendant, which entered its general appearance and relied upon the contracts in question; that the issue of the interstate characterization of these contracts is now res judicata and the plaintiff should be denied any relief whatsoever under said Amendment to Complaint."

On April 1, 1968, Kimbell and Buddies Super Markets, Inc., filed a cross complaint against Neel's Food Center, Inc., in which they demanded that in the event of a judgment in favor of Warren is rendered against them, or either of them, for the return of the property involved in this action, or for the value thereof, that the court grant judgment in favor of the cross complainants against the defendant Neel's Food Center, Inc., for indemnification in the amount of the value of said property.[1]

On April 4, 1968, Warren filed its motion for judgment on the pleadings and stipulated facts. On April 10, 1968, Joe C. Neel and Rufus Neel, d/b/a Food Center, filed a motion for judgment on the cross complaint filed by Kimbell and Buddies Super Markets, Inc. On April 10, 1968, the said cross defendants filed an answer to the cross complaint of Kimbell and Buddies Super Markets. Further reference to the controversy between Kimbell and Buddies Super Markets and the Neels, d/b/a Food Center, will be made in the consideration of the case.

On April 24, 1968, Kimbell and Buddies Super Markets filed their response to the motion of Warren for judgment and also included therein a motion for judgment in favor of Kimbell and Buddies Super Markets.

Excellent briefs have been submitted by all parties. Kimbell and Buddies Super Markets on their brief make six contentions:

(1) The court lacks jurisdiction because the value in controversy does not exceed $10,000, exclusive of interest and costs.

(2) The claim of Warren is barred by res judicata.

(3) Warren is not entitled to relief against these defendants under the equitable doctrine of restitution.

(4) Warren is barred from maintaining the action by the equitable doctrine of laches.

(5) Warren did not properly file its financing statements so as to give notice to third parties of its lien claim against the property.

(6) Warren is in any event not entitled to the property or the market value of the property in question.

(1)

As to contention (1), at the hearing on the question of the amount in controversy held March 25, 1968, the question of the value of the property was thoroughly explored. Five witnesses were introduced by Warren and two by Kimbell and Buddies Super Markets, and after a full consideration of all the evidence introduced at the hearing, the court is convinced that the market value of the property in controversy is $12,000.

(2)

Contention (2) of Kimbell and Buddies Super Markets that the plaintiff is barred by the doctrine of res judicata is without merit. In order for the judgment of the Chancery Court to bar the claim of plaintiff on the ground of res judicata, there must have been a decision on the merits of the claim asserted by plaintiff. The Chancery Court specifically found that Warren was not authorized to maintain the suit on the written instruments or upon the contracts evidenced by the written instruments, and further found that there was no evidence showing that the transactions between Warren and Neel's Food Center were interstate in nature, and therefore the claim was dismissed in accordance

[1]. Discussion of the issue raised by the cross complaint will follow the discussion and conclusion reached by the court on the complaint of Warren and the answer of Kimbell and Buddies.

with the provisions of Ark.Stat.Ann. § 64–1201 et seq.

The general rule with respect to res judicata, insofar as it may be applicable here, is set forth in Restatement of the Law, Judgments, § 49, page 193, and is as follows:

"Where a valid and final personal judgment not on the merits is rendered in favor of the defendant, the plaintiff is not thereby precluded from thereafter maintaining an action on the original cause of action and the judgment is conclusive only as to what is actually decided."

In Comment (a) at page 193, the authors state:

"A judgment for the defendant is not on the merits where it is based merely on rules of procedure rather than on rules of substantive law. If the judgment determines that the plaintiff has no cause of action, it is on the merits; but if it determines only that the plaintiff is not entitled to recover in the particular action, it is not on the merits. * * *"

The rule has been widely accepted and decisions may be found in thirty or more jurisdictions. In 30A Am.Jur., Judgments, § 347, p. 388, it is stated:

"In stating the doctrine of res judicata, the courts usually refer to the fact that the judgment sought to be used as a basis of the doctrine was rendered upon the merits, since it is a general rule that a judgment rendered on any grounds which do not involve the merits of the action may not be used as a basis for the operation of the doctrine of res judicata. Under this rule, an adjudication on grounds purely technical, where the merits cannot come into question, is limited to the point actually decided, and does not preclude the maintenance of a subsequent action brought in a way to avoid the objection which proved fatal in the first action. * * *"

In Cooper v. McCoy, (1915) 116 Ark. 501, at page 505, 173 S.W. 412, at page 413, the court said:

"It is strongly urged that the court erred in denying appellant's plea of res adjudicata. It is well settled that a former judgment in order to be a bar must have been a decision of the merits of the cause. In Smith v. McNeal, 109 U.S. 426, 3 S.Ct. 319, 27 L. Ed. 986, the court, quoting from Hughes v. United States, 4 Wall, 232, 18 L.Ed. 303, said: 'In order that a judgment may constitute a bar to another suit it must be rendered in a proceeding between the same parties or their privies, and the point of controversy must be the same, in both cases, and must be determined on its merits.' "

In Brooks v. Arkansas-Louisiana Pipe Line Co., (8 Cir. 1935) 77 F.2d 965, the court at page 968 said:

"Of course it must appear that the judgment set up as an estoppel was rendered upon the merits of the case. United States v. Moser, supra [266 U.S. 236, 45 S.Ct. 66, 69 L.Ed. 262]; Swift v. McPherson, 232 U.S. 51, 34 S.Ct. 239, 58 L.Ed. 499; Woodard v. Outland, supra [8 Cir., 37 F.2d 87]; Ledbetter v. Wesley, supra [8 Cir., 23 F.2d 81]."

See, also, Charles Keeshin, Inc., v. Farmers & Merchants Bank of Rogers, (W.D. Ark. 1961) 199 F.Supp. 478, 490; and Hogue v. Pellerin Laundry Machinery Sales Co., (8 Cir. 1965) 353 F.2d 772.

On the brief the defendants cited authority to the effect that a prior judgment is a bar to a later action on matters which "might or should have been litigated" in the earlier suit. They further contend that when the earlier cause on the contract was dismissed Warren should have immediately amended its answer to seek rescission and restitution, and because it did not do so it is now barred from seeking the relief claimed. Apparently the defendants are confusing the doctrine of res judicata with the doctrine of election of remedies. Perhaps, as a matter of convenience, it would have been better for Warren to

have amended, but there is nothing in the law which required it to do so.

This contention is without merit because the authorities cited by defendants do not require a claimant to amend to state an entirely different cause of action, but merely to include all claims which might be encompassed by the original complaint.

■ Although not specifically mentioned, "election of remedies" is an essential element of the defendants' contention with respect to res judicata. However, the court is of the opinion that Warren's failure to originally pursue its claim for rescission and restitution is not fatal to its claim at this time. Without a doubt Warren mistakenly undertook to enforce its contract in the Chancery Court, but under the law of Arkansas, Ark.Stat.Ann. § 64–1201 et seq., the conditional sales contract, under which a lien was created, could not be enforced in an Arkansas court. It had one remedy which it could enforce in the state court, and that was for restitution.

In Midland Savings & Loan Co. v. Tradesmen's Nat. Bank, (10 Cir. 1932) 57 F.2d 686, the court at page 693 said:

"The fact that it misconceived its remedy, or attempted to exercise a right to which it is not entitled, and was defeated, does not constitute an election, or preclude it from prosecuting an inconsistent, remedial right. A party is not held to have two remedies between which he must elect, where there is a valid defense to one of them. See, generally, 20 C.J. §§ 1 to 18, inclusive, pp. 2 to 18, inclusive."

In § 383, Restatement of the Law, Contracts, the learned author states:

"If one of the remedies for breach of contract is not in fact available to the plaintiff, a mistaken effort made in good faith to obtain it is not a bar to a suit for a different remedy."

In 5A Corbin on Contracts, § 1225, p. 492, the learned author states:

"It ought to be obvious that, when a plaintiff erroneously thinks that a certain remedy is available to him, his futile attempt to procure it by legal proceedings ought not to be described as an election between alternative remedies. The final decision against him merely proves that he did not have the choice that he made; the remedy sought was not an available alternative. Such an abortive attempt carries with it its own penalty—the same one that must be paid by all losers; and the fact that the defendant has committed a breach of duty and that some remedy other than the one erroneously sought was in fact available to the plaintiff ought not to make his penalty for the error more severe than that which must be borne by other losers. In general, the courts sustain this theory and hold that such a losing plaintiff is not barred from bringing another action for a different remedy on the theory that he has made a final and irrevocable election of remedy."

■ There are some decisions to the contrary. Many of them were decided on other grounds, but the choice of a legally unavailable remedy ought never of itself be held a bar to a plaintiff from correcting his error and making a fresh start.

The learned author refers to the much criticised opinion of United States v. Oregon Lumber Company, (1922) 260 U.S. 290, 43 S.Ct. 100, 67 L.Ed. 261. The court has examined the opinion and does not believe it is an authority in support of the contention of Kimbell and Buddies Super Markets.

■ In Restatement of the Law, Judgments, § 65(2), the rule is stated as follows:

"Where a judgment is rendered in favor of the defendant because the plaintiff seeks a forum of remedy which is not available to him, the plaintiff is not precluded from subsequently maintaining an action in which he seeks an available remedy."

Comment (g) on subsection (2) at page 276, is as follows:

"g. Where judgment was given for the defendant because the plaintiff sought the wrong remedy. In the situations dealt with in the preceding Comments to this Section the plaintiff had two or more available remedies, and brought an action to enforce one of these remedies and judgment was given against him. A different situation arises where a judgment is rendered against the plaintiff because he sought a remedy which was not available to him. In such a case the judgment is not on the merits, and the plaintiff is not thereby precluded from subsequently maintaining an action to enforce a proper remedy (see § 49)."

Comment (j) on subsection (2) appears at page 279, and is as follows:

"j. Wrong remedy—Actions for breach of contract and for restitution. Where the plaintiff brings an action for breach of contract and judgment is given for the defendant on the ground that he is not liable for breach of contract, the plaintiff is not precluded from subsequently maintaining an action for restitution based upon the benefit received by the defendant from the plaintiff.

"Where the plaintiff brings an action for breach of contract and judgment is given for the defendant on the ground that the action is barred by the Statute of Limitations or the Statute of Frauds, the plaintiff is not precluded from subsequently maintaining an action for restitution. (See Illustrations 6 and 7.)

"Where the plaintiff brings an action for breach of contract and judgment is given for the defendant on the ground that no contract was made, the plaintiff is not precluded from maintaining a subsequent action to recover for the benefit conferred by him upon the defendant. (See Illustration 8.)"

Illustration 8 referred to above appears on pages 280–281, and is as follows:

"8. A and B make an agreement under which A agrees to purchase and B agrees to sell the ship 'Peerless' for $10,000. A makes an advance payment of $1000. There are two ships 'Peerless', equally well known. A knows only of one, and B of the other which B owns, each being reasonable in his belief. A brings an action against B for damages for breach of contract, and judgment is given for B on the ground that owing to the mistake there was no contract. A is not precluded from maintaining an action against B for restitution of the advance payment (see Restatement of Restitution, § 15, Illustration 1)."

(3)

In contention (3), Kimbell and Buddies assert that Warren is not entitled to relief under the doctrine of restitution.

On July 12, 1963, this court decided the case of Pellerin Laundry Machinery Sales Co. v. Hogue, (W.D.Ark.) 219 F.Supp. 629, where the plaintiff had filed his complaint against the defendant seeking to recover a judgment for $87,186.00 on certain promissory notes. The defendant made various defenses to the claim of the plaintiff, but it developed that the plaintiff was incorporated in the State of Louisiana and had not qualified to do business in Arkansas. The transactions beween plaintiff and defendant were intrastate, and when these facts developed, this court, relying upon the provisions of § 64–1201, Ark.Stat.Ann., (1957), as construed in the case of Hicks Body Company v. Ward Body Works, Inc., (8 Cir. 1956) 233 F.2d 481, and Arkansas Airmotive Division of Currey Aerial Sprayers, Inc., v. Arkansas Aviation Sales, Inc., (1960) 232 Ark. 354, 335 S.W.2d 813, as well as other cases, dismissed the complaint of plaintiff without prejudice to its right of election to rescind the contract and institute action for whatever restitution it was legally entitled to claim.

In Hicks, supra, the court beginning at page 490 of 233 F.2d said:

"We need not here, however, consider the question of restitution further. Since, as we have held, the contract is not void, and since appellant is here asserting and standing upon the obligation of the contract, the situation is without basis for the question of restitution to be presently involved. Until appellant shall have elected to rescind the contract, so as not to leave it any basis for a suit against appellee thereon in another State, it is without any possible right to restitution. When it makes such an election and releases appellee from the obligation of the contract, it can have its right to restitution determined. There is no need to keep the present suit open to allow it to make up its mind and to enable it to file an amended complaint, should it decide to permit the contract to be rescinded. All that it is entitled to have done now is to have it declared that the dismissal made by the trial court of its suit will be without prejudice to its right of election to make rescission of the contract and to institute action for whatever restitution it may legally be entitled to claim."

In Arkansas, Airmotive, supra, the court at page 358 of 232 Ark., and page 816 of 335 S.W.2d held:

" * * * A foreign corporation, even though unlicensed, is nevertheless permitted to bring suit to protect its property as long as the suit does not unavoidably involve the enforcement of a prohibited contract. Fletcher, Cyclopedia of Corporations (Perm. Ed.), § 8796. Quite obviously a corporation's failure to qualify to do business should not have the effect of enabling third persons to misappropriate its property with impunity."

In Pellerin the court dismissed the original suit without prejudice, but it was not necessary to so dismiss the suit for, as held in Hicks, supra, the conditional sales contract held by plaintiff was not absolutely void, "but merely subject to a disability on the part of the corporation to maintain a suit upon it, as a contract, in the courts of Arkansas. Appellant thus would be in a position to make a rescission of the contract, if it chooses, upon the basis of appellee's repudiation of it, and so to seek restitution from appellee of the machinery and equipment which it turned over, or the value thereof * * *."

Following the decision by this court, 219 F.Supp. 629, Pellerin, after recission of the contract, filed a suit in the Eastern District of Arkansas for restitution. The case was tried to Hon. Gordon E. Young, District Judge, who held that Pellerin was entitled to restitution. The decision was appealed, Hogue v. Pellerin Laundry Machinery Sales Co. (8 Cir. 1965) 353 F.2d 772, and Judge Johnsen, writing for the court, affirmed the judgment of the District Court.

■ Therefore, Warren, an unqualified foreign corporation unquestionably has a right to maintain this action for restitution even though it could not sue in the Arkansas courts to enforce the contract.

The defendants contend that restitution should be denied as against Kimbell and Buddies because they are "third parties" who have not "misappropriated" the property in question and because they took the property under a valid judgment and were not thereby unjustly enriched.

■ The authorities cited by Warren clearly state that restitution will lie where third parties have misappropriated the property in question. See (Pellerin and Arkansas Airmotive, supra.) The defendants claim they have "misappropriated" nothing. This is probably true; however, an equitable owner's right to restitution is not limited to those situations. When a transferee takes property with knowledge of an equitable interest therein in someone other than the transferor, the property is transferred subject to that interest.

In Restatement of the Law, Restitution, § 168, p. 684, the learned author states:

"§ 168. Wrong by Transferor to Third Parties.

"(1) Where a person holding property in which another has a beneficial interest transfers title to the property in violation of his duty to the other, the transferee holds the property subject to the interest of the other, unless he is a bona fide purchaser.

"(2) Where the owner of property transfers it in fraud of third persons, the transferee holds the property subject to their claims, unless he is a bona fide purchaser."

At page 685, the following comment is made:

"b. Transfer by non-fiduciary. Where a person has an equitable interest in property held by another who is not in a fiduciary relation to him, and the holder transfers the property to a third person who is not a bona fide purchaser, the equitable interest is not cut off by such transfer and the equitable claimant can enforce it against the third person. Thus, where a person acquires property by fraud or otherwise under such circumstances that he holds it upon a constructive trust for the transferor, and the transferee transfers the property to a person who is not a bona fide purchaser, the latter holds the property upon a constructive trust for the person equitably entitled to it. So also, where a person holds property subject to an equitable lien in favor of another and transfers it to a person who is not a bona fide purchaser, the latter holds the property subject to the equitable lien."

In support of their contention that they took under a valid judgment, the defendants cite Restatement of the Law, Restitution, § 72(1), which reads as follows:

"A person who has conferred a benefit upon another by complying with a judgment, or whose property has been taken thereunder, is not entitled to restitution while the judgment remains valid and unreversed, merely because it was improperly obtained, except in a proceeding in which the judgment is directly attacked."

In Comment (c) to this section, it is stated:

"The rule stated in this Section applies although the judgment was the result of an obvious error of law by a court, a clerical error, or other imperfection in the proceedings, or even though it was obtained by the fraud of the other party. These situations are to be distinguished from that where a benefit has been conferred in satisfaction of a wholly invalid judgment.

"The rule is applicable not only where the defeated party has an opportunity to have the judgment set aside, reversed or modified by the court which rendered it or by an appellate court, but also where, without fault of his, this cannot be done. * * *"

■ The above is doubtlessly a correct statement of the law, but is, however, inapplicable to the conflict as between Warren on the one hand and Kimbell and Buddies on the other. The property was not sold by virtue of any judgment against Warren. The judgment under which Kimbell took was against Neel's Food Center, Inc. The only judgment against Warren is the dismissal of its claim. If Neel's Food Center, Inc., were now seeking restitution against Kimbell, the above statement would probably be applicable.

In Jones v. Nix, (1960) 232 Ark. 182, at page 184, 334 S.W.2d 891, 893, the Supreme Court of Arkansas said:

"It is unfortunate that Estes fell into the error of purchasing encumbered property, but that fact does not entitle him to take free of the mortgage, as a bona fide purchaser. A court can offer at a judicial sale only such title as is held by the person or estate whose interest is being sold. *Consequently it is firmly settled that the rule of caveat*

*emptor applies to such a sale, so that the purchaser takes subject to outstanding liens.*" (Emphasis added.)

■ For the contention that they were not "unjustly enriched" the defendants rely on the fact that they received the property in question in satisfaction of their valid claim against Neel's Food Center, Inc., and therefore were not "enriched." They overlook, however, that they thereby secured their claim which was otherwise unsecured, or at least not secured by this property, the possession of which had been placed with Neel's Food Center, Inc., because prior to the sale of the property owned by Warren, Kimbell may have had a valid claim against Neel's Food Center, Inc., but that claim was inadequately secured. By receiving this property in satisfaction of their claim, the defendants were unjustly enriched at the expense of Warren.

### (4)

In Contention (4) Kimbell and Buddies assert that Warren is barred from maintaining the action by the equitable doctrine of laches. In the opinion of the court this assertion is without merit.

On March 22, 1967, while Warren was still a party defendant, the Chancery Court ordered that all of the property be sold on April 27, 1967, at 10 a. m. at public auction to the highest bidder at the premises of Neel's Food Center, Inc. Following the entry of this order a hearing was held, which resulted in the dismissal of Warren's claim by the court on April 5, 1967. This was after the property had been ordered sold, but prior to the sale on April 27, 1967, at which Kimbell purchased the property.

On May 26, 1967, or within less than one month after the property had been sold by the receivers, Warren gave notice to all parties of the rescission of the contracts and notes.

The complaint of Kimbell in the Clark Chancery Court clearly indicates that Kimbell was at all times aware of the claim of Warren and of Warren's equitable interest in the property. That

Warren waited until after the sale to advise of its decision to rescind is no reason for barring Warren's present claim.

In the case of Hogue v. Pellerin Laundry Machinery Sales Co. (8 Cir. 1965) 353 F.2d 772, the court discussed the issue of laches and stated at page 774:

"Any other laches-claim which might have been attempted to be asserted on the basis of occasioned hardship and inequitable injustice would in general have been subject to the principle that ' * * * restitution is denied because of laches only because the complainant, with full opportunity to pursue a remedy, delays without adequate reason until, if restitution were granted, the other party or some third person might [inequitably] suffer a loss which would not have been occasioned had action been brought with a fair degree of promptness.' "

■ Warren's delay did not occasion any inequitable loss on the part of the defendants, and in any event the court is of the opinion that the delay was not unreasonable under the circumstances, because Kimbell was aware of Warren's claim.

### (5)

In contention (5) Kimbell and Buddies state that Warren did not properly file its financing statements so as to give notice to third parties of its lien claim against the property.

■ Plaintiff in its brief contends that had the contracts and notes been enforceable under the law of Arkansas, it would have had a prior claim to any interest claimed by Kimbell in the property. An examination of the conditional sales contracts, which were filed as financing statements in strict accordance with the Arkansas statute, reveals that the parties to the contracts were completely identified; the property being purchased was precisely identified; and the location of the property was fixed in the contracts. The court is of the opinion that the contracts were sufficient to

give Kimbell and Buddies constructive notice. They knew that this particular property had been purchased by the Food Center and was at that time Neel's Food Center, Inc., which was merely a continuation of the Food Center.

Kimbell and Buddies claim that the question of the priority of the claim should have been litigated in the state court proceedings, and since it was not so litigated, the claim is barred by res judicata. The claim of res judicata has heretofore been discussed and rejected. Kimbell and Buddies had ample notice of the origin of the property and the fact that the purchase price was not paid. The fact that the property at all times after it had been procured from Warren on December 27, 1963, and August 17, 1964, had been in the possession of Neel's Food Center, Inc., and the financing statements showing Warren's interest in the property had been properly filed since the date of acquisition is sufficient to and did establish notice to Kimbell and Buddies.

Attached to the stipulation of facts as Exhibit A is a copy of the Kimbell complaint filed in the Chancery Court, and the allegations made therein in reference to the filings of National Cash Register and Merchants and Planters Bank & Trust Company are closely akin to the filings made by Warren. The claims of these corporations were held valid and prior to the claim of Kimbell.

Ark.Stat.Ann., § 85–1–201 (1967 Supp.), Uniform Commercial Code, provides:

"(25) A person has 'notice' of a fact when

(a) he has actual knowledge of it; or

(b) he has received a notice or notification of it; or

(c) from all the facts and circumstances known to him at the time in question he has reason to know that it exists.

\*　　\*　　\*　　\*　　\*　　\*

"(26) A person 'notifies' or 'gives' a notice or notification to another by taking such steps as may be reasonably required to inform the other in ordinary course whether or not such other actually comes to know of it. \* \* \*

"(27) Notice, knowledge or a notice or notification received by an organization is effective or a particular transaction from the time when it is brought to the attention of the individual conducting that transaction, and in any event from the time when it would have been brought to his attention if the organization had exercised due diligence. \* \* \*"

Neel's Food Center, Inc., was incorporated on or about September 1, 1962. Joe Neel and Rufus Neel were officers and stockholders of the corporation. The Neel business was being operated on May 7, 1965, as Neel's Food Center, Inc., and on that date it executed and delivered to Kimbell a security agreement and financing statement to secure the payment of its promissory note in the amount of $33,000 dated May 7, 1965. Kimbell properly filed the financing statement and security agreement, but at the time it was filed the security agreements and financing statements of Warren were duly of record.

(6)

The (6) contention of Kimbell and Buddies is that in any event Warren is not entitled to the property or the market value of the property. In the argument on this contention, Kimbell and Buddies state: "Assuming for the purpose of this brief that plaintiff is entitled to some form of recovery, it is not a return of the property or the market value thereof," and cites in support of the contention § 155, Restatement of the Law, Restitution, and a portion of Comment (b) on page 613.

This assertion is based upon the contention that at the time Kimbell obtained the note from Neel and the execution of the security agreement, the property was free of any lien whereas, as has been conclusively shown, at the time Kimbell acquired its lien, the claim of Warren was in existence and superior to all sub-

sequently acquired liens in Comment (c) under § 155, it is stated:

"If the right to restitution is based upon the receipt of property, the value of a benefit received is the market value at the time of its receipt, in the absence of proof of circumstances showing that it is less. However, in accordance with the principle underlying the rule stated in § 142 which deals with change of position, if the recipient was not tortious and was no more at fault for the receipt of the property than the owner, he is liable only to the extent that the property has benefited him if, before he learns that he is not entitled thereto, the subject matter becomes incapable of return."

The property in this case is capable of being returned to Warren. Its market value at the time of the hearing has been fixed by the court at $12,000.

Had Warren been qualified to do business in Arkansas, there is no question but that the Chancery Court would have awarded it judgment and a lien prior to that claimed by Kimbell, just as was done in the adjudication of the liens of National Cash Register and Merchants and Planters Bank & Trust Company.

In addition to its claim against Kimbell, Warren also seeks a judgment for restitution against Joe C. Neel and Rufus Neel, d/b/a Food Center, and against Neel's Food Center, Inc.

The notes and security agreements under which Warren claims were signed by Joe C. Neel and Warren apparently contends that by signing the notes in that manner, Joe C. Neel intended to bind himself and Rufus Neel, d/b/a Food Center, which was at one time a partnership. The facts, as set forth in the stipulation, indicate that this was not the understanding of either Warren or the Neels at the time of the transaction. Food Center was a partnership which was dissolved in September 1962. The business continued to operate, but it was incorporated as Neel's

Food Center, Inc., on September 5, 1962. The sales contracts were executed on December 27, 1963, and August 17, 1964, at which time the partnership was no longer in existence. It is clear from the record, and Warren makes no contention to the contrary, that Warren knew that the partnership had been dissolved and that the business had been incorporated. Warren also knew, or should have known, that Joe C. Neel was entering into the agreement in a representative capacity for Neel's Food Center, Inc., and the court finds that Neel was in fact acting as agent for the corporation when he entered into the purchase agreements.

*Cross Complaint of Kimbell and Buddies*

Kimbell and Buddies, as previously set forth, contend that neither they, nor either of them, are liable to the plaintiff, Warren, on its claim or restitution. However, in their cross complaint they contend that for any judgment which Warren might obtain against them, they should be granted judgment over and against the defendant Neel's Food Center, Inc., for indemnification. The basis for this contention, although it has not been briefed by Kimbell or Buddies, is that Kimbell took the property in satisfaction of its valid claim against Neel's, and if they have to give up or pay Warren for the property, they should be allowed to recover their loss from Neel's.

This contention is without merit because Kimbell did not take the property in satisfaction of its claim. It purchased the property at a judicial sale, and the *proceeds thereof were applied by the court* in satisfaction of the claim. Therefore, to the extent of the proceeds of the sale, Kimbell's claim was satisfied as if the property had been purchased by a total stranger, and Kimbell's claim against Neel's should be determined as if it had been a stranger when it purchased the property. As a stranger, Kimbell would have no recourse against Neel's.

In 30A Am.Jur., § 180, the authors state:

"The doctrine of caveat emptor ordinarily applies to judicial sales. In accordance with the rules that the court sells, and can undertake to sell, only the right, title, interest, and property, such as it is, of the parties to the proceeding, and that there is ordinarily no warranty of title, many cases broadly state that in judicial sales, the rule of caveat emptor applies in its utmost vigor and strictness.

"Under this doctrine, the purchaser takes upon himself the risk of finding outstanding rights that could have been asserted against the parties to the proceedings; and if because of the existence of such rights, whether known or not, or discoverable or not, he takes less than a complete title to the entire property offered, or even takes nothing at all, by his purchase, he cannot complain and has no defense upon being sued for the purchase price. It has been held that an assignee of the purchaser stands in no better position than the purchaser himself. The rule is of particular force where by the terms of the sale, only the right, title, interest, and estate of the owner or parties to the proceeding are specifically offered, especially where the true condition of the title is fully set out in the pleadings and the record of the proceedings under which the sale was had."

There is no doubt that the doctrine of caveat emptor applies to judicial sales in Arkansas. See Jones v. Nix, supra, and McIlroy v. Fugitt, (1950) 182 Ark. 1017, 33 S.W.2d 719, 73 A.L.R. 1223.

The court is of the opinion that the complaint of The Warren Company, Inc., against Joe C. Neel and Rufus Neel, d/b/a Food Center, and the cross complaint of Kimbell Milling Company and Buddies Super Markets, Inc., against Neel's Food Center, Inc., should be dismissed.

It is the opinion of the court that the plaintiff, The Warren Company, Inc., is entitled to restitution of the property covered by its two conditional sales contracts, to-wit:

(1) 10 x 12 Model 90–C Walk-In Cooler, complete with coil, 1½ H.P. Unit control panel

Serial #GD–76–1673

(2) Model HXD–8 Dairy Cases, complete with 3 H.P. Unit, control panel, liquid line kit

Serial #GD 1372508
#GD 1372509

(1) Model HXM–8 Self Service Meat Case, complete with 1½ H.P. Unit, liquid line kit & control panel

Serial GD–196–1241

(1) Model HXP–12

(1) Model HXP–8 Self Service Produce Cases, complete with 3 H.P. Unit, control panel & Liquid line kit

Serial #GD–194–1266
#GD–194–1267

(1) Lot of Warren Metal Shelving consisting of 2–52' Gondolas: 1–64', 1–48', 1–28', 1–20', 1–16', 1–12', 1–10' Run of wall shelving

(3) Model COC–1200 Checkouts

(50) Model 7000/BN/SB Load Mor Shopping Carts

(2) Model MSR–12 Self Service Meat Cases, comlete with 3 H.P. Unit, Control Panel & Liquid Line Kit

Serial #GE–141–2590
#GE–141–2591

and that the plaintiff should recover from the defendants Neel's Food Center Inc., Kimbell Milling Company and Buddies Super Markets, Inc., the property listed, or its value, $12,000.

Judgment in accordance with the above is being entered today.