ROMAN CLEANSER COMPANY *v.* MURPHY

OPINION OF THE COURT

1. ADMINISTRATIVE LAW AND PROCEDURE—PRESERVING QUESTION—
TIMELINESS—NECESSARY DETERMINATION—APPEAL AND ERROR.

The general rule that a question may not be raised for the first
time on appeal in administrative law cases is not inflexible;
when consideration of a claim sought to be raised for the first
time on appeal is necessary to a proper determination of a case,
the rules prohibiting review will not be applied.

2. UNEMPLOYMENT COMPENSATION—REQUALIFICATION—FINAL DECI-
SION—APPEAL AND ERROR—NECESSARY DETERMINATION.

The requalification of a claimant for unemployment compen-
sation was necessary to determine his eligibility for unem-
ployment compensation and was decided by the appellate
court even though the issue was a decision of the unemploy-
ment compensation commission made final because of a
failure to appeal the decision in the statutory time limit
where claimant voluntarily quit his job in Michigan, moved
to Kentucky and was employed there, was laid off from
his Kentucky job, and filed for Michigan unemployment com-
pensation, because claimant's disqualification for voluntarily
leaving continued until he requalified (MCLA §§ 421.29[2],
421.32[a]).

3. UNEMPLOYMENT COMPENSATION—REQUALIFICATION—OUT-OF-STATE
EMPLOYMENT.

Unemployment compensation claimant was not requalified for ben-
efits by his out-of-state employment after voluntarily leaving
his Michigan employer, because the Michigan employer would

REFERENCES FOR POINTS IN HEADNOTES

[1] 2 Am Jur 2d, Administrative Law § 724 *et seq.*
[2-7] 48 Am Jur, Social Security, Unemployment Insurance, and
Retirement Funds §§ 35, 46 *et seq.*

be penalized by being required to pay benefits from its own account without any contribution from the other employer (MCLA §§ 421.29[1][a], 421.29[2], 421.29[3]).

DISSENT BY LEVIN, J.

4. UNEMPLOYMENT COMPENSATION—DETERMINATION—APPEAL AND ERROR—FINAL DETERMINATION.

*Determination of Employment Security Commission that the claimant's employment by a Kentucky employer requalified him for unemployment benefits after he voluntarily quit his Michigan employer and that his refusal of an offer of employment in Michigan because he wished to remain in Kentucky did not disqualify him was final and not reviewable by the appellate court where the claimant's employer did not appeal the determination within the statutory time limit (MCLA § 421.32[a]).*

5. UNEMPLOYMENT COMPENSATION—BENEFIT CHECK—DETERMINATION—ISSUES DECIDED—GOOD CAUSE.

*The issuance of each unemployment compensation benefit check is a determination entitling the claimant employer to a redetermination of the former employee's current eligibility and qualification for benefits; however, absent a change of facts or of laws, questions already decided may not be reopened unless for good cause the commission reconsiders them (MCLA §§ 421.32[a], 421.32[d]).*

6. UNEMPLOYMENT COMPENSATION—BENEFIT CHECK REDETERMINATION—GOOD CAUSE REDETERMINATION.

*The reconsideration concerning a change of fact or of law relative to an unemployment compensation claimant's eligibility for benefits, statutorily obligatory on the claimant's employer's demand when a benefit check is issued does not entitle an employer to a redetermination of all issues already decided on the original determination of eligibility, because the employer would be free to relitigate all issues without the statutory requirement of a showing of good cause (MCLA §§ 412.32[a], 412.32[d]).*

7. UNEMPLOYMENT COMPENSATION—BENEFIT CHECK REDETERMINATION—GOOD CAUSE REDETERMINATION.

*An Employment Security Commission's redetermination of the issuance of a benefit check, itself a determination, in which the commission reiterated its original determination of eligibility did not mean that the original issues were reconsidered where the statement on eligibility indicated that nothing had changed*

*from the original determination and where there was no af-
firmative evidence presented that the redetermination on the
check payment was also a reconsideration for good cause of
issues already decided (MCLA §§ 412.32[a], 412.32[d]).*

Appeal from Wayne, Thomas J. Murphy, J.   Sub-
mitted Division 1 June 2, 1970, at Detroit.   (Docket
No. 7910.)   Decided December 10, 1970.   Leave to
appeal granted April 14, 1971.   384 Mich 828.

William J. Murphy presented his claim against
Roman Cleanser Company for unemployment com-
pensation.   Benefits granted by the Employment
Security Commission and affirmed by appeal board.
Roman Cleanser appealed to circuit court.   Re-
versed.   The commission appeals.   Affirmed.

*Colombo, Vermeulen & Colombo* (by *Louis J.
Colombo, Jr.,* and *Gerard M. Dumon*), for employer
Roman Cleanser Company.

*Gursten, Gursten & Lee,* for claimant William J.
Murphy.

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, *Robert J. Eisenberg,*
Assistant Attorney General, for appellant Employ-
ment Security Commission.

Before: J. H. Gillis, P. J., and Levin and Bor-
radaile,* JJ.

J. H. Gillis, P. J.   This is an unemployment com-
pensation case.   The administrative process culmi-
nated in a determination that claimant Murphy was
entitled to benefits.   That determination was unani-
mous per the Employment Security Commission, the

* Circuit judge, sitting on the Court of Appeals by assignment.

hearing referee, and the commission's appeal board. The claimant's employer, Roman Cleanser, appealed to circuit court and it reversed, ordering Murphy to reimburse the commission for benefits unlawfully paid. Circuit court also ordered the commission to refuse further payments and to credit Roman Cleanser's rating account for those benefits paid to Murphy and charged against Roman Cleanser's account. The Employment Security Commission appeals.

## I

The facts are not in dispute. William Murphy was first employed in Detroit by the Roman Cleanser Company in August 1965. On September 30, 1967, he voluntarily left his job for personal reasons. At that time, a third party had promised Murphy employment in Kentucky where he wished to reestablish his home. Murphy moved from Detroit, found work in Kentucky, and remained employed there from November 29, 1967 to January 18, 1968, when he was laid off because of a seasonal decline in construction work. On January 31, 1968, Murphy filed an interstate claim for unemployment compensation.

Roman Cleanser objected to Murphy's claim. It was Roman's position that Murphy was disqualified for benefits because he "quit voluntarily because he was going down South". On March 1, 1968, Roman Cleanser also informed the commission that, at the time Murphy decided to quit, he was offered continued employment with Roman in Detroit or new employment at Roman plants in either Atlanta or Miami. None of these offers was accepted because, according to Murphy's testimony before the hearing referee, "I had already made up my mind and made plans to come to Kentucky".

By determination dated March 13, 1968, the security commission held that Murphy was entitled to benefits. The determination reads:

"Claimant left work 9–30–67 for reasons which were not attributable to employer.

"Therefore, the claimant is disqualified under Subsection 29(1)(a) of the act for the week ending 9–30–67 and is subject to a 6 week requalification period under Subsection 29(3) of the act.

"In this instance, the requalification requirement under Subsection 29(3) of the act has been satisfied on 1–27–68.

"In addition, the claimant's benefit entitlement with this employer is reduced by 6 weeks in accordance with Subsection 29(4) of the act.

*"Claimant's employment with Wright and Crouch Const. Co., P. O. Box 755 Mayfield, Ky. from 11–29–67 to 1–18–68, verified, is held to requalify claimant.*

"With regard to offer of work by Michigan employer, claimant states he wishes to remain in present area. No disqualification under Subsection 29(1)(e). Payments will be withheld for statutory appeal period." (Emphasis supplied).

No appeal from the commission's determination was filed by Roman within the 15-day appeal period.[1] Accordingly, the commission issued benefit checks to Murphy during the months of April and May, 1968. On May 17, Roman wrote the commission and reiterated that Murphy had voluntarily left work; that at the time he quit he was offered a job with Roman at any of three locations; and that this offer was still open. The letter concluded: "It does appear that with work available we should not be penalized for this claimant's desire to be voluntarily unemployed".

---

[1] See MCLA § 421.32a [Stat Ann 1968 Rev § 17.534(1)].

By redetermination dated June 13, 1968, the commission again held that Murphy was entitled to benefits under the act. Roman filed a timely appeal and a hearing was scheduled before a referee. Testimony was taken on two issues: (1) whether Murphy was disqualified under § 29(1)(e) of the act[2] for refusing without good cause to accept Roman's offers of employment and (2) whether Murphy was available for work and therefore eligible for benefits within the meaning of § 28(1)(c).[3] The hearing referee affirmed the commission's redetermination, resolving both of the disputed issues in favor of Murphy. With regard to the first issue, the referee held:

"Section 29(1)(e) of the act disqualifies an individual for failing without good cause to accept suitable work when offered him. Under § 29(6), the commission shall consider various factors in determining whether or not work is suitable for an individual, and one of such factors concerns the distance of the available work from his residence.

"It was set forth that the claimant herein had previously resided in Kentucky before coming to Michigan and he has now returned to that locality and has made this his permanent home. Work available with his Michigan employer, whether it is in Detroit, Georgia or Florida, is a substantial distance away from his residence and, under the circumstances, such work as offered after the claimant had moved and made his residence in Kentucky is not deemed to be suitable, and, consequently, no disqualification is imposed under § 29(1)(e) of the act."

The appeal board affirmed the referee without modification.

On appeal to circuit court, Roman's statement of questions involved included:

---

[2] MCLA § 421.29(1)(e) [Stat Ann 1968 Rev § 17.531(1)(e)].
[3] MCLA § 421.28(1)(c) [Stat Ann 1968 Rev § 17.530(1)(c)].

"Did the claimant, after being disqualified from receiving benefits in Michigan, effectively reinstate himself for benefits by working in Kentucky?"

Circuit court did not answer this question. Rather, it was the trial court's opinion that Murphy was disqualified under § 29(1)(e) of the act for failure without good cause to accept suitable work when offered—specifically, Roman's offer of continued employment in Detroit. The trial court characterized the issue before it as follows:

"The  *  *  *  question involved is, what is the correct interpretation of § 29(6), which provides:

" 'In determining whether or not any work is suitable for an individual, the commission shall consider the degree of risk involved to his health, safety and morals, his physical fitness and prior training, his experience and prior earnings, his length of unemployment and prospects for securing local work in his customary occupation, and the distance of the available work from his residence.'

"The commission takes the position that his residence is where he resides at the time he files his claim, whereas the Roman Cleanser Company says that the term 'residence' as used in the act means residence at the time he voluntarily quit his employment."

The trial judge ruled that, as a matter of law, the commission and the hearing referee had erroneously interpreted the term "residence". He adopted Roman's construction of the term: "I hold that the word 'residence' should be interpreted as residence in the community where he lived when he voluntarily quit". Accordingly, applying Detroit as the claimant's residence when he voluntarily quit, the trial court concluded that the work offered Murphy was suitable and his refusal to accept such work disqualified Murphy for benefits.

## II

On appeal, the Employment Security Commission contends that Murphy's failure to accept Roman's May 17, 1968 offer of employment[4] did not disqualify him for benefits, because the proffered employment was not suitable within the meaning of § 29(1)(e) and § 29(6) of the act. The commission argues that, in determining whether Roman had offered Murphy suitable employment, Murphy's residence *at the time such offer was made* controls, rather than his residence at the time he voluntarily quit. The commission emphasizes that § 29(1)(e) disqualifies a claimant only where he "has failed without good cause to accept suitable work *when offered him*". Applying this construction of the term "residence", the commission concludes that the work offered Murphy on May 17, 1968, was not suitable because of the great distance separating Murphy, a resident of Kentucky on May 17, and the work offered in Detroit.

If, as argued by the commission, Murphy's residence at the time he was offered employment controls, it would appear that Murphy was indeed offered suitable work on September 30, 1967, the date he quit his job with Roman. For on that date the record shows that Murphy, then a resident of Detroit, refused Roman's offer of continued employment in Detroit. As to the September 30 offer of employment, it cannot be said that any great distance separated Murphy and the offered work.

The commission suggests, however, that the question of the suitability of Roman's September 30 offer of employment is no longer open for review. That question, argues the commission, was resolved against Roman by the commission's determination of

---

4 The offer was contained in Roman's May 17, 1968, letter of protest to the commission where Roman stated that the offer of employment made to Murphy at the time he quit was still open.

March 13, 1968.   And since Roman did not appeal the commission's determination within 15 days, it became final by operation of law.

Likewise, the commission argues that Roman's failure to appeal its determination of March 13, 1968, precludes Roman from questioning for the first time on this appeal the validity of the commission's March 13 conclusion, underscored *supra,* that Murphy's Kentucky employment requalified him for benefits under the act.

## III

At the outset, we reiterate that Roman raised the requalification issue in circuit court.   And, notwithstanding the doctrine of administrative finality, that issue is raised and fully argued in Roman's brief to this Court.   Roman asks:

"Did the claimant, after being disqualified from receiving benefits in Michigan, effectively requalify for benefits under subsection 29(3) of the act by working in Kentucky?"

We think the question is one which, to use Mr. Justice BLACK's characterization, "stands forth from this record like Excalibur".   *Prudential Insurance Company of America* v. *Cusick* (1963), 369 Mich 269, 284.   Accordingly, we decline to hold that Roman's administrative tardiness precludes judicial review of the commission's determination that Murphy's work for a Kentucky employer requalified him for benefits.   We regard the question as necessary to a proper determination of the case.

"Even in law cases, *also in the instance of review of administrative decisions,* 'The general rule that a question may not be raised for the first time on appeal to this Court is not inflexible.'   (CARR, J., writing for the unanimous Court in *Dation* v. *Ford*

*Motor Co.,* 314 Mich 152, 160 [19 NCCA NS 158]).
Justice Carr proceeded (pp 160, 161):

" 'When consideration of a claim sought to be
raised is necessary to a proper determination of a
case, such rule will not be applied.' " *Prudential
Insurance Company of America* v. *Cusick, supra,* at
290. (Emphasis supplied.)

And see *Felcoskie* v. *Lakey Foundry Corporation*
(1969), 382 Mich 438, 442:

"In his first question appellant contends that the
second injury fund did not argue before the appeal
board that § 4 did not apply to plaintiff's claim and
hence cannot now be heard to argue it. Whatever
the technical correctness of appellant's argument,
we perceive this issue to be one necessary to proper
determination of this appeal and accordingly will
consider it."

That the requalification issue must necessarily be
considered in order to properly determine this case
is evident from the act itself. Section 29(2)[5]
provides:

"Any disqualification provided in subsection 29(1)
shall begin with the week in which the act or dis-
charge occurred which caused the disqualification
and *shall continue until the disqualified individual
requalifies* under subsection 29(3)." (Emphasis
supplied.)

The legislative mandate is clear: unless it can be
said that Murphy requalified under the act by his
work in Kentucky, his disqualification for vol-
untarily leaving Roman "shall continue".

We repeat that the facts are undisputed. The
question of Murphy's requalification is thus one of
law. See *I. M. Dach Underwear Company* v. *Em-
ployment Security Commission* (1956), 347 Mich 465,

[5] MCLA § 421.29(2) [Stat Ann 1968 Rev § 17.531(2)].

478, 479; *Apperley* v. *General Motors Corporation* (1969), 20 Mich App 374, 378.

In *Merren* v. *Employment Security Commission* (1966), 3 Mich App 383, *affirmed by an equally divided court,* 380 Mich 240, this Court held that an employee who voluntarily left his employment with a Michigan employer and took work with an out-of-state employer, and who was then laid off by the out-of-state employer, was not entitled to reinstatement or use of any part of the credit weeks he had acquired while working for the Michigan employer. Those credit weeks were cancelled by virtue of the employee's voluntary quitting.   Our rationale in *Merren* was that:

" 'To grant Merren's claim [would be] to penalize Lear Siegler [the Michigan employer], who would then pay Merren from its own account without any contribution from another "employer".' "

Likewise, were we to hold in the present case that Murphy's work in Kentucky requalified him for benefits under the act we would penalize Roman by requiring it to pay Murphy from its own account without any contribution from another employer. This we refuse to do.

We adhere to our decision in *Merren*.   It controls this case.   The commission erred as a matter of law in determining that Murphy's work with an out-of-state employer requalified him for benefits chargeable to the account of his former Michigan employer. We conclude that Murphy stands disqualified under the act.

In light of our conclusion, we need not decide whether Roman had offered Murphy suitable employment and whether Murphy's failure to accept such employment likewise disqualified him.

We vacate that portion of the circuit court's judgment which requires claimant Murphy to reimburse the commission for benefits paid. See MCLA § 421.32a [Stat Ann 1968 Rev § 17.534(1)]. Otherwise, the judgment is affirmed. No costs, a public question.

BORRADAILE, J., concurred.

LEVIN, J., (*dissenting*). When William J. Murphy voluntarily left the employ of Roman Cleanser Company he disqualified himself for benefits under the Michigan Employment Security Act.[1] However, on March 13, 1968 the Employment Security Commission determined that his employment by a Kentucky employer requalified him under § 29(3)[2] of the act and that his refusal of an offer of employment in Michigan because he wished to remain in Kentucky did not disqualify him under § 29(1)(e).[3]

No appeal from that determination was taken and it became final upon expiration of the 15-day appeal period.[4]

Subsequently, Roman Cleanser sought a redetermination; the commission, on June 13, 1968, and the employment security appeal board thereafter, ruled against it. Roman Cleanser then appealed to the circuit court, which ruled in its favor. The majority, in affirming the circuit court reversal of the appeal board, hold that the commission erred as a matter of law in deciding "that Murphy's work with an out-of-state employer requalified him for benefits chargeable to the account of his former Michigan employer". I dissent because I do not think we can

---

[1] MCLA § 421.29(1)(a) (Stat Ann 1968 Rev § 17.531[1][a]).
[2] MCLA § 421.29(3) (Stat Ann 1968 Rev § 17.531[3]).
[3] MCLA § 421.29(1)(e) (Stat Ann 1968 Rev § 17.531[1][e]).
[4] MCLA § 421.32a (Stat Ann 1968 Rev § 17.534[1]).

properly reach the meritorious question; the determination of March 13, from which no appeal was taken and which thereupon became final, is, by reason of the doctrines of *res judicata* and collateral estoppel,[5] not subject to collateral attack.[6]

The March 13 determination of the commission was that Murphy's employment by a Kentucky employer requalified him and that his refusal of an offer of employment in Michigan because he wished to remain in Kentucky did not disqualify him. Manifestly, the questions of the effect upon Murphy's right to receive benefits under the Michigan act of his move to Kentucky, and of his employment there, and of his refusal of employment in Michigan were all involved in and decided by the not appealed and, therefore, final determination of March 13.

Roman Cleanser points out that under § 32a[7] "the commission may, for good cause, * * * *reconsider* any prior determination or redetermination after the 15-day period has expired and issue a redetermination affirming, modifying or reversing the prior determination or redetermination". (Emphasis supplied.)    It contends that the redetermination of

---

[5] The doctrines of *res judicata* and collateral estoppel apply to administrative determinations adjudicatory in nature particularly where, as here, a method of appeal is provided and it is clear that it was the legislative intention to make the determination final in the absence of an appeal. See OAG, 1967–1968, No 4628, p 217 (March 25, 1968), which discusses the application of these doctrines to the appeal provisions of the employment security act, the act under which this appeal arises.

[6] The majority cite cases holding that on appeal a court may consider questions not properly preserved below, but those statements were made in cases on direct appeal where no issue of *res judicata*, collateral estoppel, or finality was presented.

In this connection it is noteworthy that the appeal board affirmed the decision of the referee who found that no timely protest had been made from the March 13 determination and "consequently, the issue as to the claimant's separation and failure to accept further work at the time of such separation was not before the referee at this time".

[7] MCLA § 421.32a (Stat Ann 1968 Rev § 17.534[1]).

June 13 (appealed to the circuit court and now before us on appeal from that court) is within the ambit of this language and, thus, the determination of March 13 is not protected by the doctrines of *res judicata* and collateral estoppel.

I think it is clear, however, that the June 13 redetermination[8] was not a "reconsideration" of issues already decided, but rather was made in response to the commission's statutory obligation under § 32 (d) of the act[9] to determine whether there had been a change of facts or of law affecting Murphy's right to continue to receive benefit checks.

Under § 32(d), the issuance of each benefit check is a determination entitling the employer to a redetermination of the former employee's current eligibility and qualification. A redetermination may, thus, be obtained at any time upon a claim that there has been a change of facts or of law. But, absent a change of facts or of law, questions already decided may not be reopened unless "for good cause" the commission "reconsiders" under § 32a.[10]

If every § 32(d) redetermination reopens the issues resolved upon the original determination of

---

[8] The use of the same term, "redetermination", to describe both (1) a reconsideration of an issue already decided and (2) a determination of whether, because of a change of fact or law, a decision previously made should no longer be operative, is confusing and unfortunate.

[9] "The issuance of each benefit check shall be considered a determination by the commission that the claimant receiving the check was, during the compensable period, covered thereby, eligible and qualified for benefits, and any employer upon receipt of a copy of the check as provided in subsection 21(a) may protest by requesting a redetermination as to such eligiblity or qualification as to such period and a determination as to later weeks and benefits still unpaid as are affected by such protest." MCLA § 421.32(d) (Stat Ann 1968 Rev § 17.534[d]).

[10] Compare *Commissioner of Internal Revenue* v. *Sunnen* (1948), 333 US 591 (68 S Ct 715, 92 L Ed 898), discussing the extent to which the doctrines of *res judicata* and collateral estoppel bar reconsideration of a question adjudicated as to an earlier period; see, also, 46 Am Jur 2d, Judgments, § 421, p 591.

eligibility, then the limitation in § 32a, providing that a reconsideration after the expiration of the 15-day appeal period may be made only for good cause shown, would, at least insofar as employer-sought redeterminations are concerned, be of little practical significance. If that were the rule, whenever a benefit check issues, the former employer, by simply requesting a redetermination pursuant to subsection (d), could rehash all the issues resolved by the original determination without showing good cause for reconsideration.

How then are we to distinguish a redetermination of an original determination—a reconsideration— from a redetermination of a check determination when the redetermination is made after the issuance of a benefit check? It would, of course, simplify our task if the commission would state in so many words in the redetermination whether it is a "reconsideration" of the original determination for good cause shown or whether it is made mandatorily under subsection (d) and relates only to a later check determination.

A benefit check was issued to William J. Murphy on May 1, 1968. The commission's redetermination of June 13 states on its face that it redetermines a determination of May 1 (*i.e.*, the issuance of the May 1 check, which by law is treated as a determination) —the original March 13 determination is not adverted to. Merely because the June 13 redetermination reiterates that the continuing refusal by Murphy of employment outside Kentucky did not disqualify him from receiving benefits does not mean that issues decided March 13 were "reconsidered". There had been no change of fact or of law, and in that context the restatement of the original March 13 determination as to the effect of refusing employ-

ment outside Kentucky does not indicate that the question was reconsidered by the commission. On the contrary, the June 13 redetermination decided simply that nothing had changed and, therefore, Murphy was entitled to continue to receive benefits.

There is no evidence whatsoever that the commission found good cause for reopening the original March 13 determination.[11] Absent affirmative evidence that the June 13 redetermination, mandatorily required to be made under subsection (d) as to the check determination of May 1, also represents a reconsideration by the commission for good cause of the original determination of March 13, we have no basis for concluding that when the commission issued the redetermination it issued anything other than a mandatorily-required redetermination of the May 1 check determination or that it did more than to determine that there had been no change of law or fact requiring a discontinuance of the benefits which it had on March 13 decided Murphy was entitled to receive. Accordingly, there is no basis for concluding that the commission found good cause for reconsidering or that it did in fact reconsider

---

[11] Commission regulation 270[4] provides that good cause includes situations when (1) an interested party has newly discovered material facts which through no fault of his own were not available to him at the time of the determination, (2) the commission has additional or corrected information or (3) an administrative clerical error has been discovered. (1967 ACS, p 4356.)

*Merren* v. *Employment Security Commission* (1966), 3 Mich App 383, affirmed by an equally-divided Court in 380 Mich 240, referred to in the majority opinion, was decided by our Court in 1966 and by the Michigan Supreme Court on March 4, 1968, *i.e.*, before the determination of March 13 was issued. Reconsideration by the commission on the basis of *Merren* was not sought in this case. Except for *Merren*, which was decided by our Court long before Murphy left the employ of Roman Cleanser and which was decided by the Supreme Court before the March 13 determination was issued, nothing new has come to light either of fact or of law which would justify reopening the March 13, 1968, determination either for (1) good cause under the statute, or (2) as an exception to general *res judicata* and collateral estoppel principles.

the issues decided March 13; those issues could not
be reconsidered on their merits by the appeal board
or the circuit court.