SENIOR ACCOUNTANTS, ANALYSTS & APPRAISERS
ASSOCIATION v CITY OF DETROIT

Docket No. 56982. Argued October 6, 1976 (Calendar No. 3).—Decided
December 31, 1976. Rehearing denied 400 Mich 953.

Senior Accountants, Analysts and Appraisers Association, and its
individual members brought an action for breach of contract in
Wayne Circuit Court, James Montante, J., against their em-
ployer, the City of Detroit, for a declaratory judgment and for
breach of contract. The employees had been ordered by the
Mayor of Detroit to increase their work schedule from 35 to 40
hours per week. The Michigan Employment Relations Commis-
sion ordered the city to rescind its action but denied the
employees' claim for back pay for the extra five hours, and the
plaintiffs did not appeal the commission's decision. The circuit
court granted summary judgment for defendant. The Court of
Appeals, D. E. Holbrook, P. J., and Danhof and N. J. Kaufman,
JJ., affirmed (Docket No. 19584). Plaintiffs appeal. *Held:*

The determination by the Employment Relations Commission
that the plaintiffs were not entitled to back pay for the unfair
labor practice operates as a collateral estoppel to the subse-
quent maintenance of a suit in circuit court to recover the
same reimbursement as damages for breach of contract. The
questions of fact necessary for determination of damages by the
circuit court would be identical to questions of fact already
determined by the Michigan Employment Relations Commis-
sion in concluding that awarding back pay would be improper
in this case. The test for determining whether a back pay order
is appropriate is whether the employee would have been paid
absent the unlawful unilateral action, and the MERC trial

REFERENCES FOR POINTS IN HEADNOTES

[1] 2 Am Jur 2d, Administrative Law §§ 654–670, 676.
[2] 48 Am Jur 2d, Labor and Labor Relations §§ 1022, 1034, 1055,
1063–1077, 1100, 1184.
[3] 2 Am Jur 2d, Administrative Law §§ 324, 325, 497, 500.
[4] 46 Am Jur 2d, Judgments § 410.
[5, 6] 46 Am Jur 2d, Judgments § 394 *et seq.*
[7–9] 48 Am Jur 2d, Labor and Labor Relations §§ 1294, 1321–1324.
[10] 53 Am Jur 2d, Master & Servant §§ 76–79.

examiner found that overtime would not have been paid. The circuit court, if damages were awarded, would have to determine whether the legal basis of the plaintiffs' employment relation—past practice, ordinance, contract, or existing city policy—required monetary reimbursement, and these determinations had already been made by the trial examiner.

Affirmed.

Justice Levin, joined by the Chief Justice and Justice Ryan, dissented. The employees do not seek to relitigate the determination of the Employment Relations Commission that there was no history of payment for additional hours worked so that they had not lost pay as a result of the unfair labor practice. Rather, they claim contract damages for breach by the city of the collective bargaining agreements in increasing the number of hours in the work week. Whether requiring the employees to work additional hours or requiring additional work without compensation was a breach of the collective bargaining agreements is a question that depends on the terms of the agreements, all of the pertinent facts, and the law of contracts. The Employment Relations Commission expressly made no finding on whether or not the collective bargaining agreements had been breached. When a remedy is denied, not on the merits, but because it is not available in the forum where it is sought, the doctrine of collateral estoppel does not bar an action to obtain the remedy in the forum where it is available. Remedies available from an administrative tribunal are ordinarily not exclusive, and judicial remedies may fill out administrative remedies when they are inadequate. The unavailability of the back pay remedy does not preclude this subsequent action seeking the alternative or supplemental remedy of damages. The failure to award back pay does not resolve the underlying question of whether there is a right to damages for a breach of the collective bargaining agreements.

60 Mich App 606; 231 NW2d 479 (1975) affirmed.

### Opinion of the Court

1. Estoppel—Collateral Estoppel—Employment Relations Commission—Back Pay.

   A determination by the Employment Relations Commission which was not appealed, that city employees were not entitled to an award of back pay for an unfair labor practice operates as collateral estoppel to the subsequent maintenance of a suit in circuit court to recover the same reimbursement as damages for breach of contract, where the questions of fact necessary to

determination of damages by the circuit court would be identical to questions of fact already determined by the Employment Relations Commission.

2. LABOR RELATIONS—PUBLIC EMPLOYMENT—UNFAIR LABOR PRACTICE —BACK PAY.

The test for determining whether an award of back pay or monetary reimbursement is appropriate under the public employment relations act is whether the employee in question would have been paid absent an unlawful unilateral action (MCL 423.216[b]; MSA 17.455[16] [b]).

3. ESTOPPEL—COLLATERAL ESTOPPEL—ADMINISTRATIVE LAW.

The doctrines of collateral estoppel and res judicata apply to administrative determinations which are adjudicatory in nature, where a method of appeal is provided, and where it is clear that it was the legislative intention to make the determination final in the absence of an appeal.

4. ESTOPPEL—COLLATERAL ESTOPPEL—QUESTION OF FACT.

A determination of a question of fact essential to a judgment is conclusive between parties in a subsequent different cause of action where the question is actually litigated.

DISSENTING OPINION

KAVANAGH, C. J., and LEVIN and RYAN, JJ.

5. LABOR RELATIONS—UNFAIR LABOR PRACTICE—BACK PAY—DAMAGES —COLLATERAL ESTOPPEL—RES JUDICATA.

*Contract damages for alleged breach of a collective bargaining agreement in requiring city employees to work additional hours, in contrast with an award of back pay to remedy an unfair labor practice, do not depend on a showing that the employees would have been paid for the additional hours even if the city had not increased the work week, and the factual and legal issues respecting a claim for compensation in a law action are sufficiently different from those in an unfair labor practice proceeding before the Employment Relations Commission that a decision in the administrative proceeding denying an award of back pay does not preclude a law action for damages under the doctrines of res judicata or collateral estoppel.*

6. ESTOPPEL—COLLATERAL ESTOPPEL—REMEDIES.

*The doctrine of collateral estoppel does not bar an action to obtain a remedy in a forum where it is available although the*

*remedy has been denied in another forum, not on the merits,
but because it is not available in the forum where it is sought.*

7. LABOR RELATIONS—COLLECTIVE BARGAINING AGREEMENT—BREACH
   OF CONTRACT—DAMAGES.

   *Whether damages are recoverable by city employees under a
   collective bargaining agreement for being required to work
   additional hours or for such additional work being required
   without compensation depends upon the terms of the agree-
   ment, all the pertinent facts, and the law of contracts, not on
   the historical fact whether payment has ever been made for
   additional hours in a normal work week or whether such
   payment could ever be made under existing city policy.*

8. LABOR RELATIONS—EMPLOYMENT RELATIONS COMMISSION—BACK
   PAY—DAMAGES.

   *A conclusion of the Employment Relations Commission that a
   back pay award is not available under the remedial standards
   it has developed does not preclude an action for damages for
   breach of a collective bargaining agreement where the commis-
   sion's findings are not inconsistent with maintenance of the
   action at law.*

9. LABOR RELATIONS—EMPLOYMENT RELATIONS COMMISSION—REME-
   DIES.

   *The power of the Employment Relations Commission to order
   affirmative relief under the labor relations acts is merely
   incidental to the primary legislative purpose to stop and to
   prevent unfair labor practices; the Legislature did not establish
   a general scheme authorizing the Employment Relations Com-
   mission to award full compensatory damages for injuries caused
   by wrongful conduct.*

10. MASTER AND SERVANT—EMPLOYMENT CONTRACT—ADDITIONAL
    WORK—COMPENSATION.

    *Requiring an employee to give up his time and expend labor
    beyond the requirements of an employment contract may enti-
    tle him to compensation for the time and labor expended;
    payment to an employee of the full weekly wage agreed upon
    in the contract does not preclude an action for additional
    compensation for additional hours worked.*

*David N. Walsh (George Stone,* of counsel) for
plaintiffs.

*Kermit G. Bailer,* Corporation Counsel, and

*Anna J. Diggs* and *Linda D. Bernard,* Assistants
Corporation Counsel, for defendant.

WILLIAMS, J. The issue in this case is limited to
the consideration of whether an unappealed deter-
mination by the Michigan Employment Relations
Commission that plaintiff is not entitled to "back
pay" for a determined unfair labor practice oper-
ates as collateral estoppel to the subsequent main-
tenance of a suit in circuit court to recover the
same reimbursement as "damages" for breach of
contract.

We hold that plaintiffs are barred from suing for
"damages" under a breach of contract theory by
the doctrine of collateral estoppel because the
questions of fact necessary for determination of
"damages" by the circuit court in this case would
be identical to questions of fact already deter-
mined by the Michigan Employment Relations
Commission in concluding "back pay" was im-
proper in this case.

Accordingly, we uphold the circuit court and the
Court of Appeals.

## I—FACTS

This case was submitted to the Court of Appeals
on an agreed statement of facts, in compliance
with GCR 1963, 812.10. The Court of Appeals well
summarized the pertinent facts as follows:

"Certain of the plaintiffs prior to 1970 were employed
in various city departments where, pursuant to Ordi-
nance 90-F and Ordinance 303-G, they were allowed a
reduced work schedule of 35 rather than 40 hours per
week. On July 17, 1970 the mayor of the City of Detroit
ordered all employees to begin working 40 hours per
week. This order was held in an action in the Wayne
County Circuit Court to be ineffective because, under

the ordinances, only department heads had the power to so alter the work schedule. A comparable order was subsequently issued by the appropriate department heads requiring these employees to work 40 hours for the same annual salary they had received for 35 hours of work per week.

"On August 24, 1970, many of the unions representing city employees affected by this change filed an unfair labor practice charge with the Michigan Employment Relations Commission. On December 28, 1970, a trial examiner rendered a decision and recommended issuance of a cease and desist order to compel the city to rescind its unilateral action, and also recommending that the employees' claim for back pay for the extra five hours per week be denied. On March 12, 1971, the full Michigan Employment Relations Commission affirmed the trial examiner's decision and order. The City of Detroit filed an application for leave to appeal to this Court which was denied. The affected employees and their unions made no effort to appeal the commission's decision.

"In July, 1973, 200 members of the Senior Accountants, Analysts and Appraisers Association brought a class action seeking to recover compensation for the extra time worked during the period of approximately nine months before the cease and desist order was entered. On February 19, 1974, the trial court granted defendant city's motion for a summary judgment accompanied by a letter to the attorneys indicating 'that the defense of res judicata and/or collateral estoppel is valid for the reasons and grounds asserted by defendant city in its brief.'" 60 Mich App 606, 608–609; 231 NW2d 479 (1975).

On April 25, 1975, the Court of Appeals affirmed the trial court.[1] Plaintiffs applied for leave to

[1] The Court of Appeals noted:

"The grounds asserted in support of the motion were that the issues raised in the complaint were barred by a prior judgment. The motion should properly have been brought under the accelerated judgment provisions of GCR 1963, 116.1(5). *Dunlap v Southfield,* 54 Mich App 398, 399, 400; 221 NW2d 237 (1974)." 60 Mich App 606, 608, fn 1.

appeal. This Court granted leave on December 5, 1975.

## II—DISCUSSION

We granted leave in this case "limited to the consideration of this issue: Does an unappealed determination by the Michigan Employment Relations Commission, that plaintiff is not entitled to 'back pay' for a determined unfair labor practice, operate as a collateral estoppel to the subsequent maintenance of a suit in circuit court to recover the same reimbursement as 'damages' for breach of contract?"

In resolving this issue, it is essential that we keep in mind the precise questions of law and fact decided by the Michigan Employment Relations Commission (MERC) trial examiner. First, the trial examiner held, as a matter of law, that the city's unilateral increase of the work week to 40 hours "without notice and bargaining with the representatives of its employees violated § 10(a) and (e) of [the public employment relations act] PERA." Accordingly, the trial examiner recommended "the usual remedial order in such cases".[2] This decision and order of the trial examiner was affirmed by the full Michigan Employment Relations Commission and is not in dispute in this appeal.

Second, the trial examiner was asked by the

---

[2] The order was to "require the city to cease and desist from unilaterally changing hours and other terms and conditions of employment of its employees without notice and bargaining with the collective bargaining representatives of said employees; restore the status quo by placing all employees whose hours were unlawfully increased back on the same work week which they were working prior to the unlawful increase in working hours; require the city to bargain collectively with the collective bargaining representatives of their employees with respect to hours and other terms and conditions of employment; and post appropriate copies of a notice to all employees, setting forth the terms of the recommended order herein."

charging parties "that the city be required to pay all employees affected by the increase in hours time and one-half for all hours worked between 35 and 40" as an additional remedial order to the order stated *supra.* Clearly, it was within the trial examiner's power to order such a "back-pay" remedy. As § 16(b) of the public employment relations act, MCLA 423.216(b); MSA 17.455(16)(b) provides in pertinent part:

"If upon the preponderance of the testimony taken the board is of the opinion that any person named in the complaint has engaged in or is engaging in the unfair labor practice, then it shall state its findings of fact and shall issue and cause to be served on the person an order requiring him to cease and desist from the unfair labor practice, and to take such affirmative action including reinstatement of employees with or without back pay, as will effectuate the policies of this act."

The trial examiner correctly noted that the legal test for determining whether a "back-pay" order (or monetary reimbursement) is appropriate is "whether or not the employee in question would have been paid absent the unlawful unilateral action". *Hooker Chemical Corp,* 186 NLRB No 49; 75 LRRM 1357 (1970). Applying this test to the case before him, the trial examiner made the following determinations of fact:

"The record in the instant case conclusively establishes that under the ordinances and the collective bargaining agreements applicable to employees working a 35 hour week, the practice has been that the pay week is computed on a 40 hour basis and no overtime is paid for work between 35 and 40 hours in a normal work week. The only exception to this policy and practice has been those instances where the employees involved worked a 35 hour week and were called in to

work a sixth day of work. This exception to the policy of crediting overtime only for work in excess of 40 hours was designed to alleviate a hardship on employees required to work a sixth day without forcing them to work five hours without any compensation or compensatory time.

\* \* \*

In the absence of any evidence to establish that under past practice, ordinance, or contract such payment has ever been made for the additional five hours work in a normal work week, or that such payment even could be made under existing city policy, the undersigned can find no basis for a reimbursement remedy herein. Therefore, the undersigned will refuse to recommend any monetary reimbursement or compensatory time as part of the remedy in this case."

.The full MERC also affirmed this decision of the trial examiner. Furthermore, as mentioned in the facts, the affected employees and their unions made no effort to appeal the affirmance of the full commission.

Plaintiffs Senior Accountants, et al., then brought suit in circuit court against the city alleging breach of contract and asking the court to award damages "in an amount equal to five hours wages per, at overtime rates, for the full period they were forced to work 40 hours, plus interest at five percent (5%) from the date of work \* \* \* ", *i.e.* damages based on the extra 5 hours per week worked since the 40-hours work order went into effect (essentially the same remedy sought before MERC). The question before us is whether plaintiffs are barred from maintaining this suit because of the doctrine of collateral estoppel. In this particular case, the answer to this question is yes.

It is established law in this state that the doctrines of res judicata and collateral estoppel apply to administrative determinations which are adjudi-

catory in nature, where a method of appeal is provided, and where it is clear that it was the legislative intention to make the determination final in the absence of an appeal. *Roman Cleanser Co v Murphy,* 386 Mich 698, 703–704; 194 NW2d 704 (1972), reversing and adopting Judge (now Justice) LEVIN's dissent in *Roman Cleanser Co v Murphy,* 29 Mich App 155, 166–171; 185 NW2d 87 (1970).

The applicable test for collateral estoppel in this case is accurately stated in § 68 of the Restatement Judgments, p 293:

> "Where a question of fact essential to the judgment is actually litigated and determined by a valid and final judgment, the determination is conclusive between parties in a subsequent action on a different cause of action * * * ."[3]

See *Howell v Vito's Trucking & Excavating Co,* 386 Mich 37, 41–42; 191 NW2d 313 (1971); *Jones v Chambers,* 353 Mich 674, 680–681; 91 NW2d 889 (1958).

In the instant case, if the trial court were to rule on whether plaintiffs are entitled to the "damages" for which they complain ("an amount equal to five hours wages per, at overtime rates, for the full period they were forced to work 40 hours"), the court would have to determine whether the legal basis of plaintiffs' employment

[3] The doctrine of collateral estoppel also requires that "the second action is between the same persons who were parties to the prior action". Restatement Judgments, § 68, p 294; *see, also, Howell, supra,* and *Jones, supra.* Plaintiff union was, of course, party to the action before MERC. The individual plaintiffs in this case do not dispute the Court of Appeals holding that "[t]he individual plaintiffs here are substantially identical to the labor organizations which represented them as charging parties before MERC", 60 Mich App 612. *See Steelman v Portage,* 12 Mich App 334; 162 NW2d 837 (1968), and cases cited therein.

relation—past practice, ordinance, contract, or existing city policy—required such monetary reimbursement. But the trial examiner made these precise determinations in finding "back pay" was improper in this case. See Joint Appendix, exhibit A, pp 48–50, and discussion *supra.* In other words, the questions of fact necessary for a determination of "damages" by the trial court in this case would be identical to the questions of fact already determined by the trial examiner in his conclusion that "back pay" was improper in this case. Consequently, plaintiffs are barred under the doctrine of collateral estoppel from re-litigating these same questions of fact in their subsequent action for "damages" based on a breach of contract theory.

We uphold the circuit court and the Court of Appeals.

No costs, a public question.

COLEMAN, FITZGERALD, and LINDEMER, JJ., concurred with WILLIAMS, J.

LEVIN, J. *(dissenting).* The issues in this circuit court action for money damages and in the earlier Michigan Employment Relations Commission unfair labor practice proceeding arise out of the city's action in increasing the work week of the plaintiff employees of the city from 35 to 40 hours.

The MERC found that the city was guilty of an unfair labor practice in unilaterally increasing the work week. A cease and desist order was entered. The MERC declined to award back pay for the five additional hours because there had been no history of paying for additional hours worked in a normal work week.

The circuit court dismissed this action seeking money damages for alleged breach of the collective bargaining agreements in requiring the employees

to work additional hours on the ground that further litigation is barred under the doctrines of *res judicata* and collateral estoppel. The Court of Appeals affirmed as does this Court.

This Court declares that the employees are barred under the doctrine of collateral estoppel from "re-litigating" in the circuit court "questions of fact already determined" by the MERC when it refused to award back pay as part of the remedial order for the city's unfair labor practice.

The MERC construed the statute as permitting an award of back pay where the "employee in question would have been paid absent the unlawful unilateral action".[1] "Back pay," in this construction of the act, means pay actually paid in the past—pay the employee would have received if there had been no unfair labor practice. The MERC concluded that where the unfair labor practice does not cause a stoppage of pay, there being no actual loss of pay, there is no past or back pay to award.

The MERC found as a fact that there was no evidence in the instant case that *"payment* has ever been made for the additional five hours work in a normal work week" (emphasis supplied). Since there had been no stoppage or actual loss of pay as a result of the unfair labor practice, there was no past or back pay.

It is apparent that the employees do not seek to relitigate the MERC factual determination that there was no history of payment for additional hours worked. Indeed, this was never in dispute. They contend rather that contract damages, in contrast with back pay to remedy an unfair labor practice, do not depend on a showing that the employees would have been paid for the additional

---

[1] *Hooker Chemical Corp,* 186 NLRB No 49; 75 LRRM 1357 (1970).

hours even if the city had not increased the work week (and in consequence they are out-of-pocket compensation they would have received but for the unfair labor practice), and that the factual and legal issues respecting their claim for compensation in a law action are sufficiently different from those in an unfair labor practice proceeding that decision in the administrative proceeding does not preclude a law action.

Further, the employees contend that where a remedy is denied, not on the merits, but because it is not available in the forum where it is sought, the doctrine of collateral estoppel does not bar an action to obtain a remedy in a forum where it is available.

We agree that the contentions of the employees are sound and therefore dissent.

## I

The Court declares the trial examiner concluded and the MERC agreed that there was no basis for awarding back pay in the absence of

" 'evidence to establish that under past practice, ordinance, or contract such payment has ever been made for the additional five hours work in a normal work week, or that such payment even could be made under existing city policy.' "

We agree with the foregoing statement.

The Court also declares if the employees were permitted to maintain an action for damages in the circuit court, that

"court would have to determine whether the legal basis of plaintiffs' employment relation—past practice, ordinance, contract, or existing city policy—required

such monetary reimbursement. But the trial examiner made these precise determinations in finding 'back pay' was improper in this case."

We agree that before awarding damages the circuit court would necessarily determine whether the asserted violation of the collective bargaining agreements provides a "legal basis" for a money judgment. The trial examiner did not determine, however, whether the "legal basis" of the employment relationship, the collective bargaining agreements, requires the entry of such a judgment. The MERC stated that the trial examiner did *"not"* "interpret the contract" and further stated that its decision affirming the trial examiner was *"not a finding* that [the collective bargaining agreements] have been, or have not been breached" (emphasis supplied).[2]

---

[2] The MERC declared:

"[T]he order finding that the City of Detroit breached §§ 10a and e of the public employment relations act by its failure to notify the several labor organizations and bargain with them concerning the proposed change *is not a finding that the labor agreements between the City of Detroit and the several labor organizations have been, or have not been breached.* Decision is limited to a finding that the City of Detroit violated the public employment relations act by unilaterally increasing the working hours of the salaried employees involved from 35 to 40 hours per week without first notifying and bargaining in good faith with the collective bargaining representatives of the involved employees. *The trial examiner notified the parties at the hearing that he did not intend to interpret the contracts. He did not do so."* (Emphasis supplied.)

In light of the foregoing, the trial examiner's statement, "[i]n the absence of evidence to establish that under past practice, ordinance, *or contract,* such payment has ever been made for the additional five hours" (emphasis supplied), cannot be read as a decision whether the collective bargaining agreements had been breached or whether damages were available for such breach.

The trial examiner's statement is concerned with whether payment for additional hours had in the past in fact been made. He found that it had not been made. His negative statement that such payment had not been made "under the contract" is not an affirmative finding or conclusion that the agreements did not, in this instance, require compensation or, their breach, an award of damages.

Any prior failure to make payment may itself have been a violation

The Court further declares:

"the questions of fact necessary for a determination of 'damages' by the trial court in this case would be identical to the questions of fact already determined by the trial examiner in his conclusion that 'back pay' was improper in this case."

Again, we disagree. Whether the employees had been theretofore paid for additional hours, although held to be determinative for back pay purposes, would not be determinative of their right to contract damages for being required, in asserted violation of the collective bargaining agreements, to work additional hours. The "questions of fact necessary for a determination of 'damages' " would not "be identical to the questions of fact already determined by the trial examiner in his conclusion that 'back pay' was improper in this case".

The question whether contract damages are recoverable would depend on whether it was a breach of the collective bargaining agreements to require the employees to work the additional hours or to require such additional work without compensation. Resolution of that question would depend on the terms of the agreements, all the pertinent facts, and the law of contracts, not on the historical fact whether "payment has ever been made" for additional hours in a normal work week or whether such payment could be made under existing city policy. Even if the employees

of the agreements. The circumstances of any prior failure to pay for additional hours may have been different from those in this case. This appears to have been the first time that a permanent increase in the length of the work week had been ordered. Construction of the contract would require an assessment of the entire history of the relationship (not just a single element in the limited context of a labor relations remedial order) which neither the trial examiner nor the MERC purported to, and indeed expressly declined to assume the responsibility of making.

had never been paid for working additional hours in a normal work week and could not be paid for those hours under existing city policy, damages would be recoverable if it was a breach of contract to require them to work the additional hours or to require such additional work without compensation.

## II

The Court misperceives the issue in concluding that the MERC's finding that payment for additional hours had not historically been made and could not be made under existing city policy precludes a determination in a law action that the employees are entitled to money damages under the collective bargaining agreements for the additional hours worked.

The true issue is whether, when employees assert that an employer's action in requiring additional work constitutes both a breach of the collective bargaining agreement and an unfair labor practice, they are precluded from recovering money damages in a law action for breach of contract by seeking relief from the MERC and its decision in entering a cease and desist order but refusing to award back pay for the additional work.

When the city required the additional work without compensation, the employees protested, claiming that the city's action constituted an unfair labor practice *and* a violation of the terms of the collective bargaining agreements.

An unfair labor practice charge must be filed with the MERC;[3] an action for breach of contract, in the circuit court.

---

[3] The MERC has exclusive jurisdiction to determine whether an unfair labor practice has been committed. *See Rockwell v Crestwood School District Board of Education,* 393 Mich 616, 630; 227 NW2d 736

Plainly, if back pay had been awarded and it was the functional equivalent of money damages, a law action could not be maintained; the employees may not obtain a double recovery. Also, if the MERC had declined to award back pay on the ground that the city had not required the employees to work the additional hours *(e.g.,* they had as a matter of civic spirit volunteered the additional work), or that their claims of having worked additional hours were not factually supported, then a collateral estoppel would arise because the MERC would have found facts inconsistent with a finding of breach of contract.

But where the MERC's findings are not inconsistent with maintenance of a law action and it simply concludes that a back pay award is not available under the remedial standards it has developed, its conclusion does not preclude such an action.[4]

## III

The policies of the PERA and of the law of contracts are different.[5]

---

(1975); *Southgate Community School District v Morrison,* 1970 MERC Lab Op 161, 178–179. To obtain a determination that the city had committed an unfair labor practice and a cease and desist order, the employees necessarily filed a charge with the MERC.

The doctrine of primary jurisdiction would probably require that a court refrain from exercising jurisdiction until after the conclusion of the administrative proceedings. *See generally,* 3 Davis, Administrative Law Treatise, § 19.01, pp 3–5.

[4] The parties, however, would be barred from relitigating in this action for breach of contract any facts found by the MERC material to the issues arising in this action. *See Roman Cleanser Co v Murphy,* 386 Mich 698, 703–704; 194 NW2d 704 (1972), and cases cited in fn 17 *infra* and accompanying text.

[5] Treating the employees' petition for back pay as an election of remedies, precluding a subsequent action for damages, would be contrary to authority disfavoring the doctrine of election of remedies.

The power to award back pay[6] enables the MERC to further the act's[7] purpose of promoting peaceful labor relations.[8] The United States Supreme Court has observed, in reference to the back pay provisions of the National Labor Relations Act, the model for the corresponding provisions of the Michigan labor relations acts:[9]

*See Friederichsen v Renard,* 247 US 207, 213; 38 S Ct 450; 62 L Ed 1075 (1918); Dobbs, Remedies, § 1.5, pp 3–23 (1973).

The doctrine of election of remedies is predicated on an inconsistency of remedies. *Zimmerman v Harding,* 227 US 489, 493; 33 S Ct 387; 57 L Ed 608 (1913); *United States v Oregon Lumber Co,* 260 US 290, 302; 43 S Ct 100; 67 L Ed 261 (1922) (Brandeis, J). *See, generally,* 5A Corbin, Contracts, § 1221, pp 471–473. There is no such inconsistency in the instant case.

[6] The MERC is empowered "to take such affirmative action including reinstatement of employees with or without back pay, as will effectuate the policies of this act". MCLA 423.216(b); MSA 17.455(16)(b). The MERC has entered back pay awards where employees have been wrongfully discharged *(see Nick's Fine Foods,* 1968 MERC Lab Op 307) and where an employer unilaterally changed the conditions of employment causing employees to suffer an actual loss of wages which they otherwise would have received *(see Gibraltar School District,* 1970 MERC Lab Op 379).

The language authorizing back pay awards is patterned after § 10(c) of the National Labor Relations Act, 29 USC 160(c). This Court has frequently been guided by the construction of the NLRA:

"Although we cannot state with certainty, it is probably safe to assume that the Michigan Legislature [adopted the statute] in the form that it did with the expectation that MERC and the Michigan courts would rely on the legal precedents developed under the NLRA * * * ." *Detroit Police Officers Association v Detroit,* 391 Mich 44, 53; 214 NW2d 803 (1974).

"In construing the Michigan labor mediation act and the PERA, this Court has frequently been guided by the construction placed on the analogous provisions of the NLRA by the NLRB and the Federal courts." *Rockwell v Crestwood School District, supra,* p 636.

[7] MCLA 423.216(b); MSA 17.455(16)(b).

[8] *See Virginia Electric & Power Co v National Labor Relations Board,* 319 US 533, 543; 63 S Ct 1214; 87 L Ed 1568 (1943).

This power does not extend to compensating private injuries nor does it permit an award of "speculative" or punitive damages. *Douglas Harvey, Sheriff of Washtenaw County,* 1968 MERC Lab Op 364 (humiliation, injury to reputation and future employment); *Gibraltar School District, supra,* p 381 (physical and emotional ailments and social degradation allegedly caused by school board's unfair labor practices).

[9] *See* fn 6, *supra.*

"To make an award, the Board must first be convinced that the award would 'effectuate the policies' of the Act. 'The remedy of back pay, it must be remembered, is entrusted to the Board's discretion; it is not mechanically compelled by the Act.' *Phelps Dodge Corp v Labor Board,* 313 US 177, 198 [61 S Ct 845; 85 L Ed 1271; 133 ALR 1217 (1941)]. The power to order affirmative relief under § 10(c) is merely incidental to the primary purpose of Congress to stop and to prevent unfair labor practices. Congress did not establish a general scheme authorizing the Board to award full compensatory damages for injuries caused by wrongful conduct." *International Union, UAW v Russell,* 356 US 634, 642–643; 78 S Ct 932; 2 L Ed 2d 1030 (1958).[10]

The MERC is concerned with speedy and prompt restoration of peaceful labor relations. To achieve that objective it may only be necessary to issue a cease and desist order; there may be no need to award back pay. The back pay issue may not loom large at the time in the context of labor relations peace.

Whether the MERC would in all cases limit its back pay remedy, in this case it was apparently of the view that in order to effectuate the policies of the act it was not necessary to award back pay for the additional hours the city unilaterally required the employees to work. While they had labored additional hours, they received the same weekly pay they had theretofore received. There was no actual loss of pay.

The law of contracts takes a different view of the matter. Under that body of law, requiring an employee to give up his time and expend labor beyond the requirements of the employment contract may entitle him to compensation for the time

---

[10] The Court held that the NLRA back pay provision did not preempt state court jurisdiction to award damages for an employee's wage loss attributable to an unfair labor practice.

and labor expended;[11] payment to the employees of the full weekly wage agreed upon in the contract does not preclude an action for additional compensation for additional hours worked.[12]

Given the distinctive nature of the administrative and judicial functions, inquiries, and remedies, the MERC's failure to award back pay does not bar a subsequent action for damages unless facts found by the MERC are inconsistent with a determination that the collective bargaining agreement has been breached.[13] In the instant case, the "fact" that historically the employees had not been paid for additional hours in a normal work week is not inconsistent with a finding that the collective bargaining agreements had been breached, and therefore does not preclude a determination that the employees have a right to recover a money judgment under the provisions of those agreements.

IV

The application of collateral estoppel in the instant case to bar the employees' action for damages treats the administrative remedy of back pay —a remedy the MERC found was not available[14]— as the exclusive remedy. The United States Supreme Court has stated, however, that the remedies for an unfair labor practice, provided in the

---

[11] *See* 5 Corbin, Contracts, § 1109, pp 583–584.

[12] *See* fn 2.

[13] *See Cole v UAW, Local 509*, 68 LRRM 2097 (D Cal, 1968), where the court said that the NLRB's finding that it was not an unfair labor practice to increase the amount of union dues was "persuasive" in announcing its conclusion that the union had not violated the collective bargaining agreement, and that the plaintiff-employee was not entitled to damages.

*See also* fn 17, *infra,* and accompanying text.

[14] We all agree that the employees, in failing to appeal the MERC's decision, are bound by its determination that back pay would not be awarded.

NLRA, do not exclude an action for breach of a collective bargaining agreement:

"Congress 'deliberately chose to leave the enforcement of collective agreements "to the usual processes of the law" '. See also HR Conf Rep No. 510, 80th Cong, 1st Sess, p 52. It is, of course, true that conduct which is a violation of a contractual obligation may also be conduct constituting an unfair labor practice, and what has been said is not to imply that enforcement by a court of a contract obligation affects the jurisdiction of the NLRB to remedy unfair labor practices, as such." *Local 174, Teamsters, Chauffeurs, Warehousemen & Helpers of America, v Lucas Flour Co,* 369 US 95, 101 fn 9; 82 S Ct 571; 7 L Ed 2d 593 (1962).

It is an established principle that the remedies available from an administrative tribunal are ordinarily not exclusive,[15] and that where the labor board, or one of its examiners, dismisses unfair labor practice charges, a subsequent action for damages for breach of contract is not precluded by the doctrine of *res judicata.*

"Recovery in the present suit must be based upon an existing contract, and its obligations. Issues as to those matters were not, and could not be, before the [National Labor Relations] Board. Its decisions deal solely with questions of unfair labor practices as defined in the Act * * * ." *Fibreboard Paper Products Corp v East Bay Union of Machinists, Local 1304,* 344 F2d 300, 304 (CA 9, 1965).[16]

---

[15] *Linn v United Plant Guard Workers of America, Local 114,* 383 US 53, 63–64, 66–67; 86 S Ct 657; 15 L Ed 2d 582 (1966); *International Union, UAW v Russell,* 356 US 634, 645; 78 S Ct 932; 2 L Ed 2d 1030 (1958); *Kipbea Baking Co v Strauss,* 218 F Supp 696 (ED NY, 1963).

[16] The court held that the board's dismissal of unfair labor practice charges, arising out of discharges and subcontracting of work, was not *res judicata* in a subsequent action seeking damages for breach of contract.

Similarly *see Thomas v Ford Motor Co,* 396 F Supp 52, 55–56 (ED Mich, 1973), *aff'd* 516 F2d 902 (CA 6, 1975); *Local Union No 59, Sheet*

An administrative determination that an unfair labor practice has been committed, as in the instant case, may support, rather than preclude, a separate action for money damages. In a number of cases, employers have recovered damages in law actions based on labor board determinations, given *res judicata* effect, that the union had engaged in a secondary boycott, an unfair labor practice under the NLRA.[17]

It is also well established that judicial remedies may "fill out" administrative remedies—frequently of limited scope—when the latter are inadequate.[18]

The unavailability of the back pay remedy does not preclude this subsequent action seeking the alternative or supplemental remedy of damages. "Where a judgment is rendered in favor of the

*Metal Workers International Ass'n v J E Workman, Inc,* 343 F Supp 480, 483–484 (D Del, 1972); *Thomas v Consolidated Coal Co,* 380 F2d 69, 78 (CA 4, 1967) *(dictum).*

*Compare In the Matter of National Electric Products Corp,* 3 NLRB 475, 500 (1937) and *In the Matter of New York State Labor Relations Board v Holland Laundry, Inc,* 294 NY 480, 495; 63 NE2d 68, 75 (1945), where after courts had held collective bargaining agreements to be valid, the respective labor relations boards held the contracts invalid. The board's decision in the New York case was upheld by its Court of Appeals, which stated: "A determination of the issues in an action between private parties cannot bar a contest to vindicate the public interest, as provided in the statute, just as a judgment in civil litigation between private parties does not bar a contest of the same issues by the State in a criminal action."

[17] *Texaco, Inc v Operative Plasterers & Cement Masons International Union, Local Union No 685, AFL-CIO,* 472 F2d 594 (CA 5, 1973), *cert den* 414 US 906; 94 S Ct 238; 38 L Ed 2d 144 (1973); *Paramount Transport Systems v Chauffeurs, Teamsters & Helpers, Local 150,* 436 F2d 1064 (CA 9, 1971); *International Wire v International Brotherhood of Electrical Workers, Local 38,* 82 LRRM 3063 (ND Ohio, 1972), *aff'd* 475 F2d 1078 (CA 6, 1973). *But see Old Dutch Farms, Inc v Milk Drivers & Dairy Employees Local No 584,* 359 F2d 598 (CA 2, 1966), *cert den* 385 US 832; 87 S Ct 71; 17 L Ed 2d 67 (1966).

[18] *See United States v Brown,* 348 US 110; 75 S Ct 141; 99 L Ed 139 (1954), holding that the amount of a recovery for personal injury under the Veteran's Act, 38 USC 501a, reduces, but does not preclude recovery under the Federal Tort Claims Act, 28 USC 2671 *et seq.*

defendant because the plaintiff seeks a form of remedy which is not available to him, the plaintiff is not precluded from subsequently maintaining an action in which he seeks an available remedy." Restatement Judgments, § 65(2).[19]

In sum, the failure to award back pay does not resolve the question of whether damages may be recovered for a breach of the collective bargaining agreements.

We would hold that the employees are not barred by collateral estoppel or *res judicata* from maintaining an action for money damages for breach of contract in the circuit court. We would reverse and remand for trial.

KAVANAGH, C. J., and RYAN, J., concurred with LEVIN, J.

---

[19] *See Trans World Airlines, Inc, v Hughes,* 317 A2d 114, 120 (Del Chancery, 1974), *aff'd* 336 A2d 572 (Del, 1975); *Porter v Nossen,* 360 F Supp 527, 530–531 (MD Pa, 1973); *Warren Co v Neel,* 284 F Supp 203, 212–213 (WD Ark, 1968), *aff'd* 406 F2d 775 (CA 8, 1969); 5A Corbin, Contracts, § 1225, pp 492–498. *See also Holcomb v Bullock,* 353 Mich 514, 519; 91 NW2d 869 (1958). *Cf. Carr v Kalamazoo Vegetable Parchment Co,* 354 Mich 327; 92 NW2d 295 (1958).